————o————

WILLIAM R. GAINES, DABNEY GAINES, SAMUEL M. GAINES, MARY F. WILLS and JOHN W. WILLS, her husband, MILTON J. GAINES, by JOHN M. SEARS, his guardian, AMELIA C. WALLACE and WALKER P. WALLACE, her husband, Appellants, vs. JOHN FENDER, Respondent.

1. *Will—Intention of testator must govern—Description of lands—What sufficient to pass title.*—In ejectment for certain land claimed under a will, it appeared that the instrument contained a schedule of the lands of the testator, some of which he described particularly, and others only as so many tracts in the State or a certain part of the State, without giving a description of the separate tracts; and an estimated value was placed upon the different lists. Among others was the following: "16 quarter sections of military bounty lands situated on the north side of the Missouri river, bought of Thomas Hawley." The will bequeathed to plaintiff's grantor "$3,000 worth of land to be valued by him according to the valuation contained in the list." The will further declared it to be the intention of the testator to dispose of all of his property. The executors, acting in supposed pursuance of the foregoing bequest, deeded to plaintiff's grantor the tract of land in controversy, which was shown to be the land of the testator and military bounty land, lying north of the Missouri, and in every way answered to the bounty land designated, except that it was conveyed to the testator by one Tower, and not by Hawley. *Held,* that the will should be so construed as, if possible, to effectuate the intention of the testator, and that the words, "bought of Thomas Hawley," should not be construed to restrict the other portions of the will, in which he declared his intention to bequeath his whole estate; and that as the land derived from Tower would otherwise remain undisposed of, although not particularly designated in the lists it would pass under operation of the will.

*Appeal from Linn Circuit Court.*

*A. W. Mullins,* for Appellants.

*Lander & Burgess.* for Respondent.

VORIES, Judge, delivered the opinion of the court.

This was an action of ejectment brought by the plaintiffs against the defendant for the recovery of the north-east quarter of the north-east quarter of section thirty-six in township fifty-seven, of range twenty-one, in Linn county, Missouri.

The petition was in the usual form. The answer of the defendant was a denial of the facts stated in the petition—except that he admitted he was in possession of the lands sued for —and a plea of the statute of limitations. The plea of the statute of limitations was denied by a replication.

At the trial the plaintiffs offered in evidence, a patent from the United States, conveying the quarter section of land, of which the land in controversy forms a part, to one James Tower, in satisfaction of a military land warrant therein named. 2d. A deed from said Tower to James Morrison, of Lexington, Kentucky. 3d. A deed from Henry Clay and others, as the executors of said James Morrison, to Joseph Beckett, which included the land in controversy. This deed purported to have been made under the powers contained in the last will of James Morrison, deceased.

The plaintiffs also gave in evidence various deeds from Joseph Beckett and others, purporting to convey the land in controversy, which formed a chain of title from Beckett to the plaintiffs' ancestor, to all of which deeds no objections are made; and in connection with all of these deeds, the plaintiffs offered in evidence a certified copy of the last will, with a schedule thereto attached of James Morrison, of Lexington, Kentucky, who it is not questioned had been dead for many years. The plaintiffs also offered in evidence certain sections of the Kentucky statutes concerning wills, which need not be noticed for the purposes of the case as it stands in this court.

This will was objected to by the defendant, on the ground that all of the evidence in the cause does not aid the description or supply proof of identity as to the land in controversy; and 2d. That all the evidence fails to furnish sufficient proof that the land in question ever passed by the will.

These objections were sustained, and the will and schedule excluded, to which the plaintiffs at the time excepted. The identity of the plaintiffs as the heirs of the grantee in the last deed read in evidence was also proved. No other evidence being offered, the court instructed the jury to find for the defendant.

The plaintiffs then, by leave of the court, suffered a non-suit with leave to move to set the same aside; and, afterwards, moved to set aside the non-suit, assigning the usual causes therefor. The court afterwards overruled the plaintiff's motion to set aside the non-suit, and rendered final judgment against the plaintiffs. The plaintiffs again excepted and appealed to this court.

The only questions presented for our consideration by the record in this case are, as to the legality of the action of the court in excluding the will of James Morrison from the evidence in the cause, and in overruling plaintiffs' motion to set aside the non-suit.

The ground upon which the will was excluded was, that its provisions did not authorize the executors of Morrison to convey the land in question to Joseph Beckett; or in other words, that the land in question was not included in any description or designation of land devised in the will.

It appears that Morrison, the testator, was the owner of large quantities of land, which consisted of various tracts situate in the States of Kentucky, Ohio, Missouri and other States; that in making his will, and as a part thereof, he made out a schedule of his lands, some of which he described, and other portions of which he only described as so many tracts in a particular part of the State, or in a State, without giving any description of the separate tracts or of any tract of land therein; but the land was referred to in a general way, and an estim-

ated value placed to each list, consisting sometimes of many tracts of land thus referred to or described in this general way.

The will contained, among other bequests of a similar nature, the following, "I devise to Joseph Beckett, husband of my niece, formerly Jane Holmes, three thousand dollars worth of land to be valued to him according to the valuation contained in the aforesaid list." The will afterwards, contained the following provision "I vest in my executors my whole real estate, in trust in fee simple, to enable them to carry into effect my will, with power and authority to convey such parts thereof as I have devised in fee simple, and with power and authority to sell and convey the residue thereof, including that which will revert to my estate upon the death of my wife, for the purposes of my will, and whenever my said executors shall deem proper. But no sale of any portion thereof to be valid without the concurrence of either Henry Clay or Robert Wickliff, two of my executors hereafter named. * * * * It is my intention, by this my last will and testament, to dispose of my whole estate and not to die intestate as to any part of it. The estimate which I have made of it exceeds considerably the legacies and devises hereinbefore made. Out of the residuum it is my wish that the foregoing legacies shall be made good, and contingencies which are unforeseen, provided for, etc."

By reference to the schedule or list referred to in and attached to the will, is found, among a large list of lands, the following :

"Missouri, &c. 16 qr.sections of soldiers' military bounty lands (late war) situate on the north side of the Missouri river, bought of Thomas Hawley and cost $4,000 in 1817. $4,000."

And then immediately follow lands stated to be in Illinois and Indiana, which are valued in the same way.

This will appears to have been proved up in Kentucky in 1823, and under and by virtue of its provisions, Henry Clay, the acting executor and the other executors named in the will, conveyed the land in controversy to Joseph Beckett as devisee therein.

There is no question made as to the sufficiency of the description of the lands in the various deeds given in evidence; but it is contended that the description of the land in the will is not sufficient to embrace the land in question.

This same case was before this court in 1872, (50 Mo., 564). It was then conducted in the names of other parties; but the case is the same. The will was in the case then before the court, offered in evidence alone without the schedule or list of lands referred to; and no deed or deeds offered in evidence to show that Morrison the testator had ever owned the land in question or any interest therein. It was held in that case that the will was properly excluded. That was unquestionably correct, as there was then no evidence before the court to show that Morrison ever owned a foot of land in Missouri, or that he had attempted to bequeath any by his will, or that his executors had ever conveyed or attempted to convey any to Beckett, through whom the plaintiffs claimed. As the case now stands the evidence shows that Morrison owned the land in controversy, that it is military bounty land, that he devised three thousand dollars worth of land to Beckett to be set apart and conveyed to him by his executors, that the list of land referred to in the will out of which the land was to be selected contained 16 quarter sections of military bounty lands in the state of Missouri, *conveyed to him by Thomas Hawley.* It is further shown by the will, that the testator explicitly states that it was *his intention* by his will to dispose of *his whole estate* and *not* to die *intestate as to any part of it.* Now in construing this will we must examine all of its different parts, which refer to the same subject matter, and if possible, by giving each part and clause its proper force, arrive at the intention of the testator; and, when we arrive at the intention of the testator, the will must be so construed as to carry out that intention. This is the universal rule. The question is, what was the intention of Morrison when he used the language found in his will? It is insisted by the defendant that he only intended to dispose of that part of his lands in Missouri which had been purchased of Thomas Hawley. That would be the

literal meaning of the language used in the schedule attached to the will, if there were no other language to control it; but the testator says that his intention was to dispose of his entire estate and die intestate as to none. Hence we must conclude that he intended to and did include in his will, all of the land owned by him in the state of Missouri, lying north of the Missouri river, and that the words in the will, "bought of Thomas Hawley," were not intended to restrict the other words of the will by which he intended to bequeath his whole estate. It is not to be presumed that he intended to die intestate as to this one quarter section of land bought of Tower. The land lies north of the Missouri river, is military land and in every way answers to the land named except that it was not purchased of Hawley. We are of the opinion that by a fair construction of the whole instrument, the land in controversy is properly included and passed by the will to the executors to answer the bequests made.

It follows that the will was improperly excluded from the evidence in the cause; and as no question is made as to the sufficiency of the deeds read in evidence, the judgment should be reversed.

The judgment is reversed and case remanded. Judge Sherwood is absent, the other judges concur.