Brown v. Stark.

WILLIAM H BROWN *et al.*, Respondents, v. WILLIAM H. STARK, Administrator *de Bonis Non* of the Estate of HENRY SCHOOLER, Deceased, Appellant.

St. Louis Court of Appeals, January 5, 1892.

1. **Construction of a Will.** A testator who died leaving surviving him a son, a daughter and two grandchildren (the children of a deceased child) made certain devises, bequests and provisions for each class, and directed the residue of his property to be collected, sold and divided equally between the grandchildren on the one part and the family of the son on the other, and that the latter share should be placed in the hands of his son-in-law with certain discretion in regard to the trust fund. Added to these directions, and as a part thereof, the will however contained the proviso, "that, if the moneys arising from the source last mentioned" should be sufficient to make all the provisions in favor of the son's family exceed $3,000, then the remainder should be divided in equal shares between said son, daughter 'and grandchildren *per stirpes. Held*, ROMBAUER, P. J., *dissenting*, that these provisions, whether considered alone or in connection with the remainder of the will, only intended that, if the one-half given to the family of the son should exceed said amount, then the excess of that one-half should be divided between all the heirs.

2. ——: ADMISSIBILITY OF EXTRINSIC EVIDENCE. The testimony of a witness tended to show what valuations the testator had placed upon the property disposed of by the will, and that the will had been drawn so as to give each of the three classes of heirs $3,000, and then divide the surplus equally between these classes. *Held* by ROMBAUER, P. J., *dissenting*, that this testimony was admissible, and could be considered in the construction of the will, owing to the obscurity in the meaning of said proviso.

3. Jurisdiction of Probate Courts : CONSTRUCTION OF WILLS. *Held per curiam*, that the jurisdiction of probate courts in respect to the settlement and distribution of estates necessarily includes the power, in the first instance, to construe the will of the person whose estate is being administered upon.

*Appeal from the Pike Circuit Court.* — HON. E. M. HUGHES, Judge.

AFFIRMED.

*Clark & Dempsey*, for appellant.

*Elijah Robinson*, for respondents.

BIGGS, J.—Henry Schooler made his will in September, 1884, which will was admitted to probate in June, 1885. He left surviving him one son, one daughter and two grandchildren, so that his estate in absence of a will, under the law touching descents and distributions, would have gone in three equal parts : one part to his son, one to his daughter and one to his grandchildren. He had in his lifetime conveyed a farm to his son, which the son had incumbered by mortgages and had then reconveyed to his father. This farm the will devised to the son for life, with remainder to his son's children. The husband of his daughter, who is the defendant in this case, was indebted to the testator in the sum of $3,200, and the will bequeathed to the daughter $3,000 of that sum, requiring the defendant to pay the residue of $200 into the general estate for distribution. The will also devised certain lots in the city of Clarksville to his two grandchildren in equal shares.

After making these special devises and bequests, the will made the following provisions as to the residue of the estate:

"*Fifth.* I have some other property some of which is involved in litigation; viz., a farm formerly owned by Samuel Sidwell lying and being in the said county of Pike, and an undivided interest in a farm of one hundred and twenty acres of land in Ralls county, Misosuri, and a claim against Aaron McPike now pending in the state supreme court, all the expenses of which have been paid up to the present time. I have either paid the same directly myself or furnished the money for that purpose. I hereby appoint my son-in-law, said James W. Stark, my agent and trustee, and authorize him to prosecute, settle and adjust said claims against said McPike, and receive any and all moneys accruing therefrom, and also to sell and convey by his proper deeds of conveyance the said land so involved in litigation and collect and receive the proceeds thereof, which, when collected, shall, after all expenses paid, be divided among my children and heirs as follows: To my said daughter, Catherine B. Stark, and her said husband one share, to my said son, William H. Schooler, one share directly and without limitations or restrictions, and to my grandchildren, said William H. Brown and Mary S. Crow, one share to be divided between them.

"*Sixth.* Whatever other property I may have left, after paying all debts and expenses, I desire shall be collected, sold and disposed of in manner following, to-wit: One-half to my said grandchildren, William H. Brown and Mary S. Crow, to be equally divided between them, the other half to be held by my agent and trustee, herein named, or other person who may be appointed to act in his stead, for the use and benefit of the children and family of my said son, William H. Schooler. The said agent and trustee to exercise sound discretion, as the law contemplates in such cases, in applying said trus* fund for use of said children and family, *provided,*

*however*, that, if the moneys arising from the source last mentioned shall be sufficient to make the share going to the said children and family of my said son, William H. Schooler, or to said trustee for their use up to three thousand dollars ( $3,000 ), estimating the farm given my said son and his children at the amount of the debts secured by deed of trust on same, an account of which will be kept by my said trustee, then and in that event, and as soon as said share shall be made up to $3,000, all the remainder shall be equally divided among my heirs, giving to my daughter, Catherine B. Stark, one share ; my grandchildren, William H. Brown and Mary S. Crow, one share between them ; and the other share to my said trustee for the use of the said children and family of my son, William H. Schooler."

James W. Stark qualified as executor of the estate, and collected the assets mentioned in the fifth and sixth clauses of the will. His final settlement showed a net balance of $3,021.28 in his hands for distribution. Whether this balance was the result of the collection of assets mentioned in the sixth clause alone, is not quite clear upon the record ; but it was treated both by the probate court and the circuit court, as appears from their order of distribution, as assets mentioned in the sixth clause, and hence we will so treat it.

The plaintiffs, who are the grandchildren of the testator, filed objections to the final settlement on the ground that the executor had failed to charge himself with interest on money in his hands, which objections were overruled by the probate court, and were likewise overruled by the circuit court on their appeal. As the present appeal is prosecuted by the executor, these objections are not before us and may be considered as out of the record.

The probate court made the following distribution :

"The difference between amounts in deeds of trusts made by Wm. H. Schooler on home farm mentioned in the will and $3,000, being $364—first pay to the children and family of Wm. H. Schooler per trustee the

Brown v. Stark.

```
Sum of............................$364.00
Mary S. Crow.......... ............  182.00
Wm. H. Brown...................  182.00
                                  _____
  "Total.......................$728.00.
From balance of...............................$3021.81
Deduct........................................  728.00
                                              _____
  "Leaving balance of................ ......$2293.81
  "Divided as follows:
Catherine B. Stark.............................$ 764.60⅓
Mary S. Crow..................................  382.30⅙
Wm. H. Brown ................................  382.30⅙
Children and family of Wm. H. Schooler per
  trustee....................................  764.60⅓
                                             _____
  "Total...............................$2293.81"
```

From this order of distribution the plaintiffs appealed, claiming, as they now claim, that under the sixth clause of the will they were entitled to one-half of the remaining assets absolutely, that such residue had first to be divided into two shares, one-half to go to them and one-half to the defendant as trustee for the children of Wm. H. Schooler, and that the remainder, which is mentioned in the proviso of the latter part of clause 6, had reference only to the remainder which arose after taking from the share of the defendant as trustee enough to bring such share up to $3,000. The circuit court took the view contended for by the objectors, and ordered distribution of the balance in the executor's hands, in conformity with that view, and with the following result:

```
William H. Brown..........................$ 946.60
Mary S. Crow............... ...............  946.60
J. W. Stark, trustee for children and family of
  William H. Schooler...................  746.20
Catherine B. Stark.......................  382.20
                                          _____
  Total....................................$3021.60
```

This leaves twenty-one cents unaccounted for; that, however, may be the result of the misprision of the clerk in copying the record.

This distribution was the result of the following computation: The deeds of trust on the W. H. Schooler farm, which the testator had paid off, and which he charged to that share when he devised the farm to W. H. Schooler's family, amounted to $2,636, which left $364, required by the will to be paid to the trustee to make their share up to $3,000.

Deducting this $364 from $1,510.90, leaves $1,146.90 to be divided equally among the testator's heirs, giving to Catherine B. Stark one share, $382.30; to W. H. Brown and Mary S. Crow one share, $382.30, to be divided between them (which would give each $191.15); and the other share, $382.30, to the trustee for W. H. Schooler's family.

This distribution gives to

W. H. Brown, $755.45 and $191.15..............$946.60
Mary S. Crow, $755.45 and $191.15..... ....... 946.60
J. W. Stark, trustee, etc., $364 and $382.30..... 746.30
Catherine B. Stark............................ 382.30

The executor appeals from the distribution thus made, and contends that the distribution made by the probate court was the correct distribution.

Besides the will itself there was upon the trial of the cause in the circuit court the oral evidence of the executor, which was admitted without objection, and which, as far as it bears upon the point under consideration, was to the following effect:

"Deceased had given his son, Wm. H. Schooler, a farm. The latter soon after getting a deed for the farm mortgaged it, and, when the estate passed into the hands of witness, he found the debts secured by deed of trust on the farm amounting to the sum of $2,636. At the time the said Henry Schooler made his will, his son, William H. Schooler, conveyed the farm back to him, and deceased disposed of it as is shown in his will.

Witness took the difference between the said sum of
$2,636 and $3,000—as required by the will in order to
find the amount, viz., $364—going to the objectors and
family of Wm. H. Schooler before Mrs. Stark was let in,
all of which appears more fully in the distribution made
by the probate court. Said Henry Schooler lived with
witness for several years next before his death, and wit-
ness was well advised as to his aims and purposes in
respect to his property. That deceased at the time he
made his will did not think his estate, other than the
special funds or property mentioned in his will, viz.,
the Sidwell and McPike claims and the Ralls county
land, would exceed in amount the value of $700 or $800,
and for this reason he required witness to pay over to
his estate the $200 mentioned in his will. This was
done in order to start all the legatees even at $3,000,
and divide all over that sum into three equal parts
letting Mrs. Stark in at that point. In this division he
treated the farm given the family of his son Wm. H.,
and the lots, &c., given the objectors, as being worth
the debts on the farm, viz., $2,636. It turned out that
considerable sums of money were collected from parties
whom deceased regarded as insolvent at the time he
made his will and up to his death. Witness had
charge of the business affairs of deceased for some years
before his death and had frequent consultations with
him in regard to same."

The proper distribution of the residue of the estate
depends entirely upon the intention of the testator as
expressed in the sixth clause of the will. The probate
court construed the words "money arising from the
source last mentioned," found in the proviso, as refer-
able to the entire residue, and it made its distribution
accordingly. On the other hand the circuit court was
of the opinion that those words referred solely to the
half interest bequeathed to the family of William H.

It seems to us that this clause, when read by itself,
is reasonably clear, and the circuit court was fully jus-
tified in making the distribution which it did. Its plain

reading is to the effect, that the residue of the estate should be divided equally between the Brown children and the family of William H., unless the portion thus bequeathed to the latter should exceed $3,000 ; in that event such excess was to be divided equally between all the heirs.  The proviso cannot, in our opinion, be made to apply to the share of the Brown children, unless it appears from other portions of the will that it was the intention of Mr. Schooler to make an equal distribution of his property.  Can this idea of an equal distribution, for which the appellant contends, be gathered from the entire will, when each part is considered and given its fair meaning ?  If so, the sixth clause must not be construed literally, but it must be made to harmonize with other portions of the will, if the language used, will possibly admit of such an interpretation.  The intention of the testator must be the controlling guide, and such intention must be gathered from the whole instrument, and not from single paragraphs, or single clauses.  *Gaines v. Fender*, 57 Mo. 342 ; *Carr v. Dings*, 58 Mo. 400.

Let us briefly restate the provisions of the will.  In the first clause the testator declared that it was his wish to make a fair and just disposition of all property *"remaining undistributed"* among his heirs.  He then proceeded to make special bequests and devises.  He first bequeathed to Mrs. Stark and her husband the latter's note amounting to $3,200, less $200, which the husband was required to pay into the estate.  He then devised the Clarksville property to his grandchildren ( the objectors ), without fixing any value on it.  The farm was then devised to W. H. Schooler and his children with directions, that the amounts of the mortgages which had been placed thereon by W. H. ( which we presume were held by the testator ) should be charged against W. H. and his children, when the distribution of the residue was made.  In the fifth clause the sale of

the Sidwell farm and the Ralls county farm was directed, and the proceeds, together with whatever might be realized from the McPike claim, were to be distributed equally among all his children. Then the testator, by the sixth clause, undertook to dispose of the residue of his estate after the payment of his debts.

Now if it was the intention of the testator that his children should share equally of his bounty, and his primary object in making the will was to accomplish such purpose by the proper distribution of his property "*remaining undistributed*," then the amounts or values of prior advancements ought to have been mentioned and ordered to be brought into hotchpot, or if the children had been equally advanced such statement ought to have been made. The failure by the testator to do so furnishes some evidence that he entertained no such purpose. Again, if the equal division of the property was intended the testator would certainly have named the value of the Clarksville property as fixed in his own mind, and not left it to be determined by extrinsic evidence, which was absolutely necessary in order to carry out the idea of equal distribution. Again, if equalization was intended, it is reasonable to conclude that it would have been provided for in the distribution of the property mentioned in the fifth clause. Neither would the testator have required Stark to pay any part of his note; because the property mentioned in the fifth clause was sufficient, when added to the estimated value of the residue as testified to by Stark, to have brought the shares of the objectors and Wm. H. to $3,200, and more, if the Clarksville property was to be valued at $2,636. Besides, if equality of distribution was the idea controlling the testator, he would have provided that, if the residue proved insufficient to make the objectors and Wm. H. equal with Mrs. Stark, then the latter should make up the deficit. As it was, she was left with that possible advantage.

Brown v. Stark.

These considerations have led us to the conclusion that this idea of equal distribution is to be found only in the testimony of Stark; that it is entirely foreign to the will; and that the interpretation placed by us on the sixth clause is the proper one, and must be regarded as the expression of the true intention of the testator concerning the residue of his estate. The reasons, which induced the testator to give his grandchildren a possible advantage on a final distribution, do not concern us. He might not have given to their mother as much as he had given to Mrs. Stark and to his son; or he might have had regard for their circumstances in life.

The appellant's contention that the probate court had no power to construe the will and order distribution thereunder, and that consequently the circuit court acquired no jurisdiction of the cause by the appeal, is untenable. The jurisdiction of probate courts in respect of the settlement and distribution of estates necessarily includes the power, in the first instance, to construe wills; otherwise there could be no distribution of an estate in the probate court where there was a will. 1 Woerner's Law of Administration, sec. 155. The appellant was administering the estate as executor, and not as "agent or trustee" under the will. This renders the authorities relied on in support of this assignment inapplicable.

What we have said necessarily leads to the approval of the order of distribution which was made by the circuit court. The judgment will, therefore, be affirmed. Judge THOMPSON concurs. Judge ROMBAUER dissents.

ROMBAUER, P. J. (*dissenting*).—The controlling guide in construing a will is to ascertain the intention of the testator. *Turner v. Timberlake*, 53 Mo. 371; *Gaines v. Fender*, 57 Mo. 342; *Carr v. Dings*, 58 Mo. 400; *Smith v. Hutchinson*, 61 Mo. 83; *Allison v.*

*Chaney*, 63 Mo. 279. This intention is to be gathered, not from single words or single passages, but from a consideration of the whole instrument, and the general design and scope of it, giving to each part its proper meaning. *Russell v. Eubanks*, 84 Mo. 82. The application of these uncontroverted propositions to the instrument before us compels me to dissent from the construction placed upon the will by my associates.

That the sixth clause of the will is ambiguous is evident. In the first part of the clause the testator divides the property therein mentioned into two halves. He gives one half to his grandchildren, one half to a trustee for the benefit of his son and family. If the clause had stopped there, it would have been clear that the property therein mentioned was bequeathed to his grandchildren and his son's family in equal shares, treating them as classes. But there is a limitation to that gift by the proviso, and the contention of the respondents is that, while the clause itself contemplates an equal distribution between these two classes, it is the aim of the proviso to make that distribution unequal. That result cannot possibly be worked out, unless we alter the phrase, "*the moneys arising from the source last mentioned*," by inserting before it the words "*one-half*" or words of similar import. That the word "source," when literally taken, refers to the property mentioned in the clause and not to one-half of it, cannot well be controverted. Since the clause without the proviso clearly contemplates an equal distribution between the two classes, it is apparent to my mind that the proviso is inserted, not for the purpose of disturbing that equal distribution between the classes named, but of preserving it, and of further providing that, in the case of an excess of property, a third class should be let in, so as to make the distribution equal all round.

Moreover, if the clause is to be literally construed, then, in the event that the property or its proceeds amounted to no more than $364, the grandchildren would get nothing; because the limitation introduced

by the proviso, when literally taken, affects all the property mentioned in the clause. It is evidence, to my mind, that the testator intended to give by that clause *something* to both classes therein named in any event. The weakness of the contention made by the grandchildren is that they claim that the first part of the clause must be construed *literally* in their favor, but that the proviso should be construed liberally, and also in their favor.

It seems to me that, even if the meaning of the sixth clause would have to be determined by itself, without the aid of other parts of the will, or extrinsic evidence, my construction of it would be its proper construction ; but that, when taken in connection with other parts of the will, the correctness of that construction is all the more apparent. There is nothing in the will itself, which would indicate that the testator intended to make an unequal distribution of his estate between the three classes who were the objects of his bounty ; on the contrary, it is evident that he intended such distribution to be equal. That he valued his estate, outside of the property mentioned in the fifth clause, at $9,000, appears by the fact that he required $200 of the $3,200, advanced to his daughter and son-in-law to be returned into the general estate for distribution, and that he required his son's share, given to a trustee for himself and family to be brought by the residuum to $3,000, before further distribution was made. That he did not provide for this equalization out of property mentioned in the fifth clause, finds ready explanation in the fact, that by that clause he intended to make some provision for his son, as a representative of one of the classes, without intervention of a trustee, keeping up the equality of distribution between the three classes in other respects. That the construction of the sixth clause, which is contended for by the grandchildren, cannot possibly work an equal distribution of the testator's estate, is conceded on all sides.

So far I have endeavored to demonstrate the correctness of my construction of this provision of the will without resorting to the aid of extrinsic evidence. That the extrinsic evidence in this case, if admissible at all, conclusively vindicates the propriety of that construction, must be conceded. That evidence was admitted without objection in the trial court, and the propriety of its admission is not questioned either in the argument of counsel for the respondent or in the opinion of the court. The admissibility of this extrinsic evidence seems to to be clearly covered by Sir James' Wigram's fifth proposition, which states that, "for the purpose of determining the object of a testator's bounty, or the subject of disposition, or the quantity of interest intended to be given by his will, a court may inquire into every material fact relating to the person who claims to be interested under the will, and to the property which is claimed as the subject of disposition, and to the circumstances of the testator and of his family and affairs, for the purpose of enabling the court to identify the person or thing intended by the testator, or to determine the quantity or interest he has given by his will. The same ( it is conceded ) *is true of every other disputed point, respecting which it can be shown that a knowledge of extrinsic facts can, in any way, be made ancillary to the right interpretation of the testator's words.*" 1 Redf. on Wills, 503, n. 15.

Evidence tending to show what valuation the testator himself put upon the lots devised to his grandchildren, and what valuation he put upon the property mentioned in the sixth clause of his will, is, in view of the obscurity of that clause, unquestionably admissible. If the evidence thus admitted is true, and its truth is in no way challenged, we are enabled to understand the meaning of that clause clearly, and must come to the conclusion that it is in harmony with all other parts of the will in trying to effect an equal distribution of the testator's estate between the three classes named.