Smith v. Hutchinson.

*Southgate & Seay,* for Respondent.

———o———

ELIZABETH SMITH, Respondent, *vs* ANDREW HUTCHINSON, Appellant.

1. *Wills—Intention of testator to govern.*—The controlling guide to a court, in construing a will, is to ascertain the intention of the testator.

2. *Will—Bequest of "all my other property," etc.—Effect of as to after acquired land, etc.*—A will bequeathed to the sister of testator a tract of forty acres, being all the land then owned by him, and contained a devise to his mother, of "all my other property, consisting of horses, cattle and hogs, and money and effects whatsoever." He subsequently entered a tract of 260 acres. *Held,* that under a proper construction of the instrument the above quoted devise did not pass to his mother his title to the latter tract.

3. *Notes given in consideration of an agreement to convey land—Estoppel as to outside parties.*—In suit upon notes given in consideration of an agreement to convey to defendant a valid fee simple title, the latter may defend by showing a failure to give such deed; and this being the fact, where there are parties in interest who are not joined in the suit, it will not avail plaintiff to show that they knew of the agreement to convey, and approved of it, either by positive acts or by acquiescence. For, 1st, the doctrine of estoppel is not allowed to supply the place of a paper title where that is covenanted for; and, 2d, a judgment would not bind such outside parties, nor be any evidence against them in an action afterward brought by them to assert their rights against the property.

4. *Estoppel—Ignorance of title.*—Acquiescence in a sale of land caused by ignorance of the true state of title, will not work estoppel.

*Appeal from Pettis County Circuit Court.*

*Gordon, with Owens & Wood,* for Appellant.

I. In suit on note for purchase price of land, failure of title in vendor is a proper defense. (Luckett vs. Williamson 31 Mo., 54; Pierce vs. Chouteau, 13 Mo., 526; 18 Mo., 369; 20 Mo., 433; 21 Mo., 415.)

II. The word "property" is a broad term, but is qualified by the testator. He tells particularly of what it consists, and enumerates as in an inventory every species of personal property but not real estate. He could not have intended to convey after-acquired land. (Bowlin vs. Furman, 34 Mo., 39.)

III. There are no facts in this case amounting to an estoppel as against the heirs of Joseph E. Smith, and defendant, on discovering the defect in the title, at once abandoned his possession and claim to the property, and his answer prays a rescission of the contract.

*Phillips & Vest,* for Respondent.

I. Acts amounting to estoppel *in pais* are as effectual as a deed. (Bigel. Estop., 480—As to estoppel generally, see Taylor vs. Zepp, 14 Mo., 488; Newman vs. Hook, 37 Mo., 212; Campbell vs. Johnson, 44 Mo., 251; Gregg vs. Von Phul, 1 Wal., 274; Gregg vs. Wells, 10 Ad. & El., 90; Bigel Estop., 500–3 and notes; Chapman vs. Chapman, 59 Penn. St., 214.)

The testimony clearly shows an estoppel against all the heirs.

II. The agreement of plaintiff to convey, and that of defendant to pay, were independent covenants, and the bond has a mutual penalty of $4,000. And plaintiff's failure of title will not avail as to the note. (Counsel then cited Freeman vs. Mitchell, 8 Mo., 487; Cook vs. Johnson, 3 Mo., 172; Bruffey vs. Brickey, 5 Mo., 395; Lucas vs. Clements, 7 Mo., 387, and quoted at length from Smith vs. Busby, 15 Mo., 389, referring also to Deitrich vs. Franz, 47 Mo., 85; Small vs. Reeves, 14 Ind., 164; Hacker vs. Blake, 17 Ind., 97; Owens vs. Rector, 44 Mo., 390.)

NAPTON, Judge, delivered the opinion of the court.

This action was on a note for $500, due May 15, 1870, and was commenced August 6, 1870, in the Circuit Court of Moniteau county, but was finally tried in Pettis county, to which a change of venue was taken.

The note was the first of three notes given by the defendant Hutchinson for a tract of land in Moniteau county, and the agreement in regard to the sale was dated in October, 1869, and was substantially as follows: The plaintiff, Eliz. Smith, in consideration of $2,000, to be paid by the defendant Hutchinson, pursuant to his covenants, agrees that she will, on or before the 15th of October, 1871, make a complete title, in fee simple, by sufficient conveyances, of a certain tract of land containing 340 acres—which is described in the articles by their numbers—and Hutchinson agrees that upon the execution of such conveyance he will pay to Mrs. Smith $2,000, in full consideration of the "absolute purchase," etc., of said tract of land, in the manner following, to-wit: $500 on or before the 15th of May, 1870, $500 on or before the 15th of October, 1870, and $1,000 on or before the 15th of October, 1871, all bearing 10 per cent. interest," etc. And an agreement was further made in regard to the possession.

The answer was filed at the March term, 1872. Its details, and those of the reply to it, need not be stated. The evidence on the trial shows the facts relied on as a defense in the answer, about which there is really no controversy.

In 1854 Joseph E. Smith, a son of the plaintiff, who at that time owned 40 acres of the land which was the subject of the subsequent agreement between the plaintiff and the defendant, made a will in which he devised this 40 acres to his sister Sarah. The next clause in the will, from which plaintiff's title was supposed to be derived, is this: " I give and devise to my beloved mother, Elizabeth Smith, all of my other property, consisting of horses, cattle, sheep and hogs, moneys and effects, whatsoever, all to be hers during her lifetime, then to be disposed of agreeable to her own will and testament." The plaintiff also owned 40 acres of the land by entry, and Jos. E. Smith, subsequently to the date of his will, entered 260 acres; so that, as to the 40 acres devised to her daughter Sarah, there was no pretence of title in the mother, and as to the 40 entered by the mother, there was an indisputed title, and as to the 260 acres which constituted the remainder of the tract, the plaintiff's title depended on the construction of the will. If the possession above recited gave this land to the plaintiff for life, with power to dispose of it by will or by deed, then the plaintiff had title to 300 acres of the 340 agreed to be conveyed; but if the possession did not extend to real estate, or did not authorize a disposition by deed, then the plaintiff could only convey 40 acres of the 340 agreed to be conveyed, and an undivided one-sixth of the remainder.

Mrs. Smith had two sons and three daughters, and in case of intestacy her interest in the 260 acres was only one-sixth.

There was evidence to show that the daughters and sons lived on this land, or in the immediate neighborhood, and knew of the proposed sale to defendant, and acquiesced in it —perhaps some of them advised it. The mother was upwards of eighty years old, two of the daughters were married, and one of the sons-in-law acted as agent of the mother in negotiating and concluding the sale to Hutchinson. The impression of all parties, indeed, was, that Mrs. Smith had a right to sell this land, probably derived from a submission of the will at one time to a lawyer, and an opinion expressed

by him that the will conveyed the land to the mother. This impression continued until about the time the first note of the defendant fell due, when one of the sons-in-law of plaintiff submitted the will to another lawyer, and obtained a different opinion as to its construction, and thereupon advised the defendant to withhold payment. It seems probable from the evidence that all the children would even then have signed the deed, but for a lack of confidence in the son-in-law, who acted as principal agent of his mother in the sale. There it no evidence of bad faith on the part of any of the parties to the transaction.

There was no proof offered on the subject of insolvency of plaintiff. A deed containing the usual covenants was tendered. The plea was filed and all the subsequent pleadings and trials occurred long after the date of the day when the deed was to have been made and the notes paid.

The case was tried by the court, and the finding and judgment were for plaintiff, and the case is here by appeal.

The first point discussed here relates to the construction of the will of Joseph E. Smith, but in our judgment there is hardly room for doubt on this question. The controlling guide to a court in construing a will is to ascertain the intention of the testator, and it is difficult to imagine that Joseph E. Smith, who at the date of his will owned 40 acres of land only, and devised that to his sister, intended by the clause succeeding this devise in which he bequeathed "all his other property, consisting of horses, cattle, etc.," to devise 260 acres of land which he subsequently entered. The word "property" might be large enough to embrace real as well as personal estate, but its meaning is restricted by the explanation given to it by the testator.

Besides, this construction, unnatural as it would be, only gives the plaintiff a life estate and a power to dispose of it by will.

But the main ground on which reliance is placed to authorize this judgment, is, that the claims of the children were barred by estoppel; that they knew all about the sale

and approved of it, either positively or by a silent acqui-escence.

The principle of estoppel is very much misunderstood, if it is supposed to be applicable to a case of this kind. The doctrine is employed to protect valid interests and posses-sions. It is not allowed to supply the place of paper title, in a case where paper title is covenanted for. The heirs of Jos. E. Smith are not parties to this case, and the judgment would not bind them, or be any evidence against them, in any suit they might institute. The testimony in regard to estoppel might be totally different from that produced here, in a suit brought by the heirs. The defendant contracted for a deed conveying the fee simple, and to offer him a title depending on parol testimony would be no compliance with the cove-nants assumed by the vendor.

But apart from this, we have been unable to discover any estoppel in the conduct of the heirs, or the slightest evidence tending in that direction. It is true, they acquiesced in the sale, but it was manifestly under the impression that their mother had the title. There is nothing in the record to show the ages of the plaintiff's children, from the date of the death of their brother Joseph to the day of the sale. The daughter to whom the forty acres was devised, might, if she assented to the agreement for sale, have been estopped, as her title was beyond question ; but conceding that, the result is not af-fected. So far as the evidence is preserved, the first informa-tion which the children of the plaintiff had of their title, was obtained after the contract of sale was made by the mother. The truth seems to be, that the whole affair was a mistake, that plaintiff and defendant and the children of plaintiff were all alike ignorant of the real state of the title, and either party, if so inclined, might well have applied to a court to have the contract rescinded on that ground, or the heirs of Joseph might have executed a deed, and in that way removed all objections to the title.

The case of Smith vs. Busby (15 Mo., 387), is relied on to sustain the judgment in this case, but the circumstances un-der which that case was determined were essentially and ma-

terially different from the present. In that case Busby had not merely failed to relinquish his claim bought of Townshend, the purchase money for which was in said suit, but had used it in effecting a compromise with Leonard—had treated it as of value—and, as the learned judge intimates, had virtually conveyed it to Leonard, and made it the basis of a compromise, by which he acquired a clear title to an adjoining tract. In this case the defendant, so soon as he discovered or was apprised of the defects of title, surrendered his possession, came into court with a petition for a rescission of the contract and for a return of the $30 which he had paid on it. The whole purchase money was due, and the deed was due, before the answer was filed. The whole case was before the court. To compel the purchaser, under such circumstances, to pay the purchase money, or any part of it, upon the tender of a deed which manifestly did not convey a complete title to any portion of the land except forty acres, would be a singular administration of equity. It was a contract, as we have observed, executed by all parties to it, under a mistake, and so long as this mistake was not corrected, it ought not to be enforced against either party.

The judgment will be reversed and the cause remanded ; the other judges concur.