## JOHN M. HEADY et al., Appellants, v. GEORGE W. HOLLMAN et al.

**Division One, June 28, 1913.**

1. **VENDOR: Assertion of Title in Good Faith: Not Fraud: Breach of Warranty.** A vendor's assertion of title made in good faith does not constitute a fraud. Otherwise every breach of warranty would be attended with fraud, and the rule that a vendee in possession under covenants of warranty from a solvent, resident grantor is in the absence of fraud remitted to his covenants for relief would be a palpable absurdity.

2. **EQUITY: Rescission of Sale: Insolvency of Grantor.** In a suit by a purchaser to rescind an executed sale of realty the insolvency of the grantor is not an independent ground of relief, but merely a circumstance negativing the adequacy of the grantee's remedy at law on the covenants in his deed, and therefore, in a proper case, warranting equitable interposition in circumstances in which, but for such interposition, irreparable loss would result.

3. ———: ———: ———: **After-born Children: Stay or Abatement of Payment.** A purchaser of realty, who, having been advised by his attorney before the sale that after-born children of A would come in as remaindermen, agreed nevertheless "to take chances" on that happening and closed the sale, cannot make that possibility a ground of rescission, and, no such child having been born, no actual loss has occurred, and the mere possibility of loss through such an event does not entitle him to a stay of payment or abatement *pro tanto* of the purchase price, even though his warrantor be conceded to be insolvent.

4. **REMAINDER: To Heirs of Living: Vested.** In case of limitation to one with remainder to the heirs of another who is still living, if the context shows that the term is used in a popular and not technical sense, meaning the children of a living person, the term is regarded as a *descriptio personae;* and whoever answers thereto, if living, may take the remainder as a vested one.

5. **DEED: Construction: Intent of Maker.** In deeds, as in wills, the intent of the maker is the object of all construction, and that intent is to be gathered from a consideration of the whole instrument.

6. ———: **Vested Estates Favored by Law.** The law favors vested estates, and the rule is that estates shall be held to vest at the earliest possible period, unless a contrary intention is clearly manifested in the grant.

7. ————: Remainder to "Children and Heirs at Law:" Construction.  A deed conveyed land to B and C "for and during their natural life, the survivor for and during her natural life, and then unto the children and heirs at law of A, their heirs and assigns forever.· The said B is not to be regarded as a child or heir at law of said A," etc.  *Held*, that the children of A took a vested remainder at the time of the execution and delivery of the deed, which remainder will open to let in afterborn children of A.

Appeal from Greene Circuit Court.—*Hon. George W. Goad*, Special Judge.

AFFIRMED.

*Hamlin & Seawell* for appellants.

The title was defective and the grantors being insolvent authorized the relief demanded by appellants. Rozier v. Graham, 146 Mo. 352; Doener v. Doener, 161 Mo. 399; Emmerson v. Hughes, 110 Mo. 627; Waddell v. Waddell, 99 Mo. 338; Dennison v. Keasby, 200 Mo. 412; Bruce v. Wolfe, 102 Mo. App. 384; Coleman v. Clark, 80 Mo. App. 339; Eagan v. Martin, 81 Mo. App. 676; Thompson v. Dickson, 68 Mo. App. 535; Whiteside v. Magender, 75 Mo. App. 364; Florida v. Morrison, 44 Mo. App. 364; Williamson v. Hall, 62 Mo. 406; Kellog v. Manlin, 50 Mo. 502; Reppy v. Reppy, 46 Mo. 571; Field v. Oliver, 43 Mo. 200; Paris v. Haley, 61 Mo. 453; Luthy v. Woods, 1 Mo. App. 167; Fox v. Hubbard, 79 Mo. 390.

*V. O. Coltrane* for respondents.

(1) Plaintiffs charge the defendant, Geo. W. Hollman, with fraud in selling their two lots, the title to one of which they claim is imperfect. In order to entitle the plaintiffs to recover, this charge must be sustained by the clearest proof. It is not sufficient for plaintiffs to show a failure of title, but they must go further and show that some deceit was practiced

for the purpose of putting them off their guard, or that special confidence was reposed in representations by defendant that were fraudulent, and that the agreement was entered into upon the strength of such confidence. Langdon v. Greene, 49 Mo. 363; Hart v. Railroad, 65 Mo. 509. (2) The title to lot 42 is not imperfect. The deed from the Ideal Real Estate and Abstract Company vested the remainder in the "children and heirs at law of George W. Hollman," living at the time of the execution of the deed, as a class. No contingency is possible except that another child, or children, may be born unto George W. Hollman, and that risk plaintiffs admit they agreed to assume. Waddell v. Waddell, 99 Mo. 338; Rothwell v. Jamison, 147 Mo. 614.

BLAIR, C.—This is a suit by the purchaser to rescind an executed sale of realty. The petition contains an alternative prayer for damages and a *pro tanto* abatement of the purchase price. Allegations of fraud, misrepresentation of the title and insolvency of the warrantor are relied upon to confer jurisdiction in equity. There is also a prayer for the cancellation of a deed of trust executed by appellants to secure part of the purchase money, injunctive relief against its enforcement during the pendency of the suit also being invoked.

Suit for Rescission of Sale.

The evidence shows that a preliminary contract was executed whereby George W. Hollman agreed, in consideration of $2900, to be paid to him, to "convey and assure to J. M. Heady, in fee simple, clear of all incumbrance whatever, by a good and sufficient warranty deed and abstract of title" lots 41 and 42 in the First Inside Addition to Springfield, Missouri. The title to lot 42 was not in Hollman but, for a consideration paid, in part at least, by him, had been conveyed by a former owner to Nellie E. Hollman, his daughter,

and Annie I. Maxfield "for and during their natural life, the survivor for and during her natural life, and then unto the children and heirs at law of George W. Hollman, their heirs and assigns forever. The said Nellie E. Hollman is not to be regarded as a child or heir at law within the provisions of this deed of said George W. Hollman. And the said Ideal Real Estate and Abstract Company hereby covenants to and with the said Nellie E. Hollman, Annie I. Maxfield and children of George W. Hollman, and their heirs and assigns of said children . . . that the title of the premises aforesaid unto them, the said Nellie E. Hollman, Annie I. Maxfield and children of George W. Hollman and heirs and assigns of said children it will forever warrant and defend, except," etc. When this deed was made Hollman had six living children, one of whom was Nellie E. Hollman, and all of whom were living at the time of the trial. Some of them had children but they and their children constituted all the living descendants of George W. Hollman. Annie I. Maxfield, George W. Hollman and five of George W. Hollman's children conveyed to the sixth, Nellie E. Hollman, and she executed a warranty deed to plaintiffs for lot 42. This evidently accorded with the understanding of the parties, and no complaint was or is made because George W. Hollman was not a party to this deed.

Heady, who conducted all the negotiations for the purchase, testified that after the abstract was submitted his attorney examined it and told him, in George W. Hollman's presence, that "the title was good except one defect;" that, under the deed quoted from above, in case another child was born to Hollman it would "come in for its part later on." This defect plaintiff testifies he thereupon "agreed to take chances on" and the trade was closed. Instead of paying the full purchase price in cash, however, Heady paid $1500, and he and his wife executed a deed of

trust on lots 41 and 42 to secure a balance of $1400. The note thus secured was assigned by Hollman to defendant bank, and the bank was proceeding to sell under the deed of trust when this suit was instituted.

There was no evidence Hollman actually misrepresented the title in any way, and the weight of the evidence is that he owned real property, subject to execution, to a value somewhat exceeding the entire value of lot 42. Heady was asked by his counsel whether Nellie E. Hollman (now Hatfield) was solvent, and answered: "Well, no, sir; she is not, to the best of my knowledge." This was all the evidence respecting her solvency.

I. The evidence does not suggest bad faith or concealment, and the only representations as to the title are found in the contract of sale and the deed of conveyance. This is an executed contract and the vendee is in possession. If it be conceded the title is defective, yet a vendor's assertion of title made in good faith does not constitute fraud. Otherwise "every breach of warranty must be attended with fraud" (Mitchell v. McMullen, 59 Mo. l. c. 257), and the rule that a vendee in possession under covenants of warranty from a solvent, resident grantor is *in the absence of fraud* remitted to his covenants for relief would be a palpable absurdity. The question is settled. [Herman v. Hall, 140 Mo. l. c. 276; Crumb v. Wright, 97 Mo. l. c. 19; Hart v. Railroad, 65 Mo. 509.]

*Vendor's Assertion of Title.*

II. The insolvency of a grantor in a case of this kind is not, of course, an independent ground of relief but merely a circumstance negativing the adequacy of the grantee's remedy at law on the covenants in his deed, and, therefore, in a proper case, warranting equitable interposition in circumstances in which, but for such interposition, irreparable loss would result. [Swain v.

*Insolvency of Grantor.*

Heady v. Hollman.

Burnley & Street, 1 Mo. l. c. 405.] If it be conceded the evidence sufficiently shows insolvency, the question in the case is whether there was an actual or impending loss against which equity will grant relief.

Advised by his attorney that after-born children of George W. Hollman would come in as remaindermen in lot 42, Heady, nevertheless, agreed "to take chances on" that happening and closed the sale. He cannot now make that possibility a ground of rescission, and, no such child having been born, no actual loss has occurred, and the mere possibility of loss through such an event does not entitle him to a stay of payment or abatement, *pro tanto,* of the purchase price on that ground, even though his warrantor be conceded to be insolvent. [Barton's Admr. v. Rector, 7 Mo. l. c. 528, 529; Rawlins v. Timberlake, 6 T. B. Monroe, l. c. 232, 233; Fletcher v. Wilson, Sm. & M. Ch. l. c. 389; Perkins v. Williams, 5 Cold. l. c. 513, 514; Whitbeck v. Cook, 15 Johns. 483; Farber v. Blubaker Coal Co., 216 Pa. St. l. c. 214; Whitworth v. Stuckey, 1 Rich. Eq. l. c. 410.]

*Taking Chances on After-born Child.*

Counsel seemingly concede the correctness of this rule, and their real contention is that under the deed partially set out above the remainder to "the children and heirs at law" of George W. Hollman, is contingent, whereas all the "chances" Heady agreed to take were such as would be those consequent upon the existence, under the deed, of a vested remainder in Hollman's children as a class.

It is conceded, of course, that if the grant had been to the named life tenants, remainder to the *children* of George W. Hollman, the remainder would have been vested; but it is contended that the words "the children and heirs at law of George W. Hollman" embrace *two* classes, i. e. (1) children and (2) heirs at law; that each of these classes takes a one-half interest in remainder and, since the living have no heirs,

as to one-half the fee after the life estate the remainder is contingent; that the children might, by surviving their father, also take as heirs but their deeds executed before the life estate has fallen in would not convey their interests as such. So runs the argument.

It is well settled that in a case of limitation to one with remainder to the heirs of another who is still living (as in this case) if "the context shows that the term is used in a popular and not technical sense, meaning the children of a living person . . . the term is regarded as a *descriptio personae;* and whoever answers thereto, if living, may take the remainder as a vested one." [2 Washburn on Real Property (6 Ed.), sec. 1565; Fanning v. Doan, 128 Mo. 1. c. 329.]

Remainder to Heirs of Living.

It is argued, however, that the use in the deed of both the terms, "children" and "heirs at law," necessarily discloses an intent to use them in different senses. In deeds as in wills the intent òf the maker is the object of all construction (Tindall v. Tindall, 167 Mo. 1. c. 224), and that intent is to be gathered from a consideration of the whole instrument. [Roberts v. Crume, 173 Mo. 1. c. 579, 580.]

Intent of Maker of Deed.

It is to be kept in mind also, that "the law favors vested estates and the rule is that estates shall be held to vest at the earliest possible period unless a contrary intention is clearly manifest in the grant." [Tindall v. Tindall, supra, 1. c. 225; 2 Washburn on Real Property (5 Ed.), sec. 1544.]

The Law Favors Vested Estates.

In the case of Waddell v. Waddell, 99 Mo. 338, the grant was to John J. Waddell for life "and on the death of said John J. Waddell, the title, in fee simple, to go and vest in *the children and heirs at law* of the said John J. Waddell, equally, to be divided between them as tenants in common."

This court in that case held: "The words 'children and heirs at law' as used in the deed must be construed as constituting a class," and that the remainder vested in the children living at the time of the execution and delivery of the deed but that such remainder would open and let in such of the class as might come into existence during the existence of the particular estate, i. e., that "all of the children of John J. Waddell, whether living at the time of the execution of the deed or born subsequently thereto, were equal sharers in the land conveyed . . . and took thereby a vested estate in remainder."

<div style="margin-left:2em"></div>

*Vested Remainders.*

In the instant case an examination of the deed in question in the light of that decision and the principles above stated reveals ample reason for the conclusion that the word "children" and the words "heirs at law," as employed therein, are used as synonyms and the whole intended to designate the children of George W. Hollman as remaindermen. While the first designation of the remaindermen is "the children and heirs at law" of Hollman, yet the covenants of warranty run only to the *children* of Hollman, *their* heirs and assigns. In view of the fact that this deed was executed by a stranger for a valuable consideration paid, at least in part, by George W. Hollman, the omission of covenants of warranty to the "heirs at law" of George W. Hollman is difficult of explanation if, as contended, the words "heirs at law," were intended to designate a class of beneficiaries in remainder separate and distinct from the "children" of George W. Hollman. Further, the deed excludes Nellie E. Hollman from participation in the remainder, and the language employed for that purpose is that she "is not to be regarded as a child or heir at law within the provisions of this deed of George W. Hollman." If the hypothesis that "children" and

"heirs at law" designate distinct classes of benefi-
ciaries be accepted, then the exclusion of Nellie E.
Hollman would have been fully accomplished by lan-
guage excluding her from participating as one of
George W. Hollman's "children." The use of the
words "or heirs at law" in the clause excluding her
is without meaning except on the theory that the word
"children" and the words "heirs at law" had been
employed as synonymous and were repeated in the
same sense. This is true unless the deed be inter-
preted to mean that the children living at the time of
the execution and delivery of the deed were to take as
members of the class "children" and, in case they sur-
vived the life tenants, were again to take an additional
distinct interest as "heirs at law." This construction
of the deed would be productive of such singular con-
sequences that only clear language could induce its
adoption. The context clearly warrants, in this case,
the same conclusion reached in Waddell v. Waddell,
supra.

Something is said as to the effect of the word
"then" introducing the phrase designating the re-
maindermen. It, or an equivalent expression, is usu-
ally employed in a grant of this kind and the effect
is to denote the time when the remaindermen are to
have possession, not to postpone the vesting of their
interests. [Rodney v. Landau, 104 Mo. l. c. 258; Bow-
ers v. Porter, 21 Mass. l. c. 210.]

From these considerations and the favor with
which the law regards the vesting of estates it follows,
as in the Waddell case, that the children of George W.
Hollman took a vested remainder at the time of the
execution and delivery of the deed in question, which
remainder will open to let in after-born children of
Hollman; that the interests of all living children have
been acquired (so it is conceded) by appellants and,
as to children hereafter born appellants have no right

to equitable relief in view of the agreement discussed in a preceding portion of this paragraph.

The judgment is affirmed.  *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court.  All of the judges concur, except *Bond, J.,* who takes no part.