**Albert E. NIXON and Ellen Gertrude Nixon, Appellants,**

v.

**Charles H. FRANKLIN, Mary C. Franklin, H. Inks Franklin, Eleanor Franklin, Coxie M. Franklin and Alladee F. Franklin, Respondents.**

No. 45028.

Supreme Court of Missouri.

Division No. 2.

April 9, 1956.

J. W. Grossenheider, Lebanon, C. W. Terry, Camdenton, for appellants.

Richard C. Collins, Bolivar, Theo. G. Scott, Buffalo, for respondents.

STORCKMAN, Judge.

. Plaintiffs, as purchasers of 160 acres of land in Dallas County, brought suit in

two counts against the defendants as vendors. The first count was for a rescission of the transfer and restitution of the purchase price together with compensation for improvements in the total sum of $19,198.74. The second count was for punitive damages in the sum of $5,000. The case was tried by the court without a jury and judgment was in favor of the defendants and against the plaintiffs on both counts. The plaintiffs have appealed.

The first amended petition in Count I charges that the defendants conveyed the farm land to plaintiffs by warranty deed; that prior thereto the defendants "represented to the plaintiffs that they had an indefeasible estate in fee in said real estate and that they had the right to convey and would convey to the plaintiffs a fee simple title to said land and that the title that defendants would give to the plaintiffs would be a good marketable title" and that such representations were false and fraudulent; that plaintiffs, in reliance on said representations, purchased the real estate for $11,550, and put improvements thereon and paid taxes and insurance in excess of $5,569.64; that they discovered that defendants had not conveyed to them a good marketable title in the summer or fall of 1954 when they attempted to sell the land; that plaintiffs thereupon offered to reconvey the real estate to the defendants by quitclaim deed and requested a return of the purchase price and reimbursement for the permanent improvements but that defendants refused so to do. The second count incorporated by reference the allegations of the first count and charged that "said fraudulent representations were made by the defendants of these plaintiffs willfully, intentionally, and with malice for the purpose of defrauding these plaintiffs" and prayed for $5,000 as punitive damages.

The defendants' answer admitted the execution of the deed, alleged that "any and all transactions in this cause were covered by contract and deeds, copies attached hereto," and denied all other allegations.

The plaintiffs, Albert E. Nixon and Ellen Gertrude Nixon, are husband and wife, and prior to the transaction in question lived in Rawlings, Wyoming. The evidence showed that they had never been in Dallas County, Missouri, before about August 1, 1951, and all they knew about the real estate located there was through real estate dealers' catalogues. Towards evening on August 2 the plaintiffs were taken by a Mr. Rush, a real estate agent with the Globe Realty Company, to the home of the defendants, Charles H. Franklin and Mary C. Franklin, his wife. Because of the lateness of the day they only looked through the house. The next day, August 3, they returned to the Franklin farm at about midday or shortly thereafter and were taken around and shown the farm by Mr. Franklin. The parties then went back to the house where Mr. Nixon got some information about the taxes and the plaintiffs decided to purchase the land. The purchase price was $11,550, and Nixon made a down payment of $2,000 consisting of $1,500 in cash and a $500 check given the next day.

A written purchase agreement signed by Albert E. Nixon and C. H. Franklin was introduced in evidence as Defendants' Exhibit A. It is on a printed form of Globe Realty Company. C. H. Franklin signed as "Record Owner" and accepted the offer by Albert E. Nixon to purchase the 160 acres located three and one-half miles north of Urbana on Highway 65 for the price and sum of $11,550; it acknowledged the payment of $1,500 in cash. The agreement stipulates that land is to be conveyed "by general warranty deed free and clear of all encumbrances, taxes, liens or judgments" and follows with a provision "to assure a merchantable title to the above described property including Abstract certified to date."

The Nixons had supper with the Franklins and spent the night in their home. The next morning they all went to the Bank of Urbana where Franklin got an abstract out of the safe deposit box and handed it to Nixon. Nixon had no legal or other training fitting him to examine abstracts. There was no lawyer in Urbana and Nixon was so advised. There

was some talk of examining the abstract but accounts of what was said differ. After "fingering" the abstract Nixon returned it to Mr. Franklin. The warranty deed and abstract were left in escrow at the bank until Nixon paid the balance of the purchase price. A Mr. Seaton connected with the bank, who was present at the meeting, was dead at the time of the trial. The wives of Nixon and Franklin were in the room during this meeting, but apparently took no part in the discussion. Nixon gave a check for $500 making the total down payment $2,000. After the meeting, which lasted about thirty minutes, the Nixons left immediately by automobile on their return trip to Wyoming. The balance of the purchase price was mailed to the Bank of Urbana by Mr. Nixon and the warranty deed and abstract of title were sent to him. The agent's commission apparently was $550 and the balance of the consideration was kept by Charles Herman Franklin. The Nixons took possession and moved onto the farm on March 19, 1952, and lived there for approximately two years before the present controversy arose.

The warranty deed dated August 4, 1951, and introduced in evidence as Plaintiff's Exhibit 1, recited that it was "by and between Charles H. Franklin and Mary C. Franklin his wife, H. Inks Franklin and Elinor Franklin his wife; and, Coxie M. Franklin and Alladee Franklin his wife, of Dallas-Hickory Counties, Missouri, Parties of the first part, and Albert E. Nixon and Ellen Gertrude Nixon, husband and wife, of the county of Carbon, in the State of Wyoming, Parties of the second part, * * *." It provided that the first parties "do by these presents Grant, Bargain and Sell, Convey and Confirm unto the said parties of the second part, their heirs and assigns" the 160 acres of land therein described: "To Have And To Hold the premises aforesaid, with all and singular the rights, privileges, appurtenances and immunities thereto belonging or in anywise appertaining unto the said parties of the second part, and unto heirs and assigns forever; the said above named grantors hereby covenanting that they are lawfully seized of an indefeasible estate in fee in the premises, herein conveyed, that they have good right to convey the same; that the said premises are free and clear of any incumbrances done or suffered by them or those under whom they claim and that they will Warrant and Defend the title to the said premises unto the said parties of the second part, and unto their heirs and assigns, forever against the lawful claims and demands of all persons whomsoever." The deed is acknowledged before a notary public in Columbia, Missouri under date of August 4, 1951 and was filed of record on August 28, 1951.

It was stipulated in the record that H. Inks Franklin and Coxie M. Franklin were the only living "heirs" of Charles H. Franklin and that at the time of trial Charles H. Franklin was 75 years of age and his wife, Mary Franklin, 71 years old. Only twenty of the 160 acres were owned by Franklin in fee simple. The remaining 140 were devised to defendant C. H. Franklin by his father's will "to have and to hold during his natural life, and at his death to descend to his heirs if any, and if none to fall back to my estate to be equally divided among my heirs, but should any one or more of my children be dead leaving heirs, such heirs shall receive only their parents part." As to the above facts there is no dispute. The controverted facts generally relate to what was said by defendant C. H. Franklin with respect to his title and the abstract of title on the afternoon and evening of August 3 and at the bank on the morning of August 4. Pertinent facts will be further discussed later in the opinion.

The trial court held that there was no evidence that any of the defendants other than C. H. Franklin made any representation as to the title of the land. As to C. H. Franklin the court found that plaintiffs failed to prove that he had made "any false representation as to the marketability of the title" and also failed to prove "that the defendant Charles H. Franklin had knowledge that the title he conveyed by warranty deed to these plaintiffs did not convey a marketable title." The judgment was in favor of all of the defendants. The

plaintiffs on appeal contend that under the law and the evidence a decree should have been rendered in their favor.

There can be no question that the defendants did not deliver to the plaintiffs a good marketable title and the trial court so found, stating: "There is no question that plaintiffs' title would be considered a nonmarketable title, because if either of Charles H. Franklin's sons would predecease his father, and leave children, such children would take a half interest in the real estate, and if both sons would predecease their father, either with or without children, the plaintiffs' title would be of no value whatsoever."

■ A good title has been held to mean and be synonymous with a marketable title. Rogers v. Gruber, 351 Mo. 1033, 174 S.W.2d 830, 831. A merchantable title has the same meaning as a marketable title; it is the kind of title that would not only enable the record owner to hold his land, but to hold it in peace and, if he wishes to sell the land, to be reasonably sure that no flaw or doubt will arise to disturb its market value. Thomas J. Johnson & Co. v. Mueller, 356 Mo. 1109, 205 S.W.2d 521, 527 [5]; Ott v. Pickard, 361 Mo. 823, 237 S.W.2d 109, 112. Cases upon which this court held on similar facts that the real estate titles involved were not marketable are: Rozier v. Graham, 146 Mo. 352, 48 S.W. 470; Thompson v. Craig, 64 Mo. 312; Smith v. Hutchinson, 61 Mo. 83. For other cases holding titles nonmarketable see Gill on Real Property, Vol. 2, p. 666, and Ives v. Kimlin, 140 Mo.App. 293, 124 S.W. 23.

■ Nor can there be any question that the defendant, Charles H. Franklin, agreed to vest the plaintiffs with a marketable title. Regardless of what verbal commitments were made, the purchase contract, Defendants' Exhibit A, expressly provides that the conveyance shall be by general warranty deed, free and clear of all encumbrances, and a "merchantable title to the above described property including Abstract certified to date" was assured. This was executed by Albert E. Nixon and C. H.

Franklin the evening of August 3, 1951. A person contracting to convey realty by a warranty deed impliedly agrees to deliver a marketable title to the purchaser. Rogers v. Gruber, 351 Mo. 1033, 174 S.W.2d 830, 831 [5]; McPherson v. Kissee, 239 Mo. 664, 144 S.W. 410, 412 [3].

The contention of the plaintiffs, as shown by their testimony, is consistent with the written assurance by defendant C. H. Franklin of a marketable title. Albert E. Nixon testified that C. H. Franklin, when showing the land on August 3, referred to it as "my land" and when they got back to the house Franklin showed Nixon the tax receipts with Franklin's name on them. Nixon further testified that on the following morning Franklin produced an abstract at the meeting in the Bank of Urbana and handed it to Nixon, and that he, Nixon, stated that he wanted to have it examined by a lawyer and that C. H. Franklin then further assured Nixon that he had a good title and that the abstract was good. When Nixon learned that there was no lawyer in Urbana he testified that he took C. H. Franklin's word that the abstract showed good title. Mrs. Nixon corroborated the testimony of her husband and testified that she heard her husband say that the abstract should be examined and that C. H. Franklin stated he had good title and the abstract was good. The plaintiffs denied that C. H. Franklin ever told them that he had just a life estate in the land.

The defendant, C. H. Franklin, put on the stand by the plaintiffs, admitted that he knew that he only had a life estate in the land and that it went to his heirs upon his death. He further testified he so told the Nixons and denied that he told them he would give them a clear title.

■ The testimony of the Nixons is consistent with the provisions of the purchase contract and the testimony of C. H. Franklin is in conflict with it. The testimony of the Nixons is more reasonable and believable; we are convinced from the evidence in the record that C. H. Franklin represented to the plaintiffs that he had a good title and that the abstract so showed, and

concealed from them the fact that as to 140 acres of the land he only had a life estate of a sort that he could not convey marketable title even with the signature of his two sons.

■ The respondents contend that the judgment is correct as to both the law and the evidence and state that the judgment should not be set aside unless clearly erroneous and that due regard should be given to the opportunity of a trial court to judge the credibility of the witnesses, citing Section 510.310(4), RSMo 1949, V.A.M.S., which section relates primarily to cases tried upon facts without a jury. In the appeal of an equity case we review the record de novo and determine the credibility, weight and value of the testimony and evidence in the case giving due deference, of course, to the trial chancellor's findings. State ex rel. Taylor v. Anderson, 362 Mo. 513, 242 S.W.2d 66.

Testimony of witnesses other than the parties tended to prove that C. H. Franklin knew he did not have a merchantable title and their evidence was not denied. The defendants offered no evidence. C. H. Franklin is the only one of the defendants that testified and he was called as a witness by the plaintiffs. We are unable to find any credible evidence that C. H. Franklin or any of the defendants disclosed to the plaintiffs that the title being conveyed was not a marketable one. A doubt on the question is resolved by the assurances in the purchase contract that a merchantable title would be conveyed. The evidence in the case supports the conclusion that C. H. Franklin knew he did not have a marketable title.

■ The warranty deed contained covenants of seisin and covenants of warranty which were in confirmation of the assurances of C. H. Franklin, both orally and in writing. Also the deed of conveyance contained the words, "Grant, Bargain and Sell," which by force of our statutes, §§ 442.420 and 442.430, have been held to import the vesting of a fee simple title. Allaben v. Shelbourne, 357 Mo. 1205, 212 S.W.2d 719, 720. The defendants cannot be heard to say that they did not promise to convey a fee simple title and a marketable title.

■ Apart from any affirmative misrepresentation C. H. Franklin was obliged to disclose any impairment of his title known to him. In the case of Derby v. Donahoe, 208 Mo. 684, 106 S.W. 632, 636, 637, the court stated: "It is not essential, in order to entitle the plaintiff to the relief prayed for in her petition, that it should appear that the defendant willfully and intentionally perpetrated a fraud in the procuring of her conveyance which is sought to be set aside. Courts of equity, in dealing with the subject of fraud in transactions between parties, have long since fully recognized that there are certain acts, when done willfully and intentionally respecting a transaction between the parties, would constitute actual fraud, and that the omission to do certain things, or the concealment of facts which are material to the party with whom you are dealing, by which an undue advantage is taken of your adversary in the deal, would also constitute a fraud, not upon the basis that the omissions or concealments were willful and intentional, but predicated upon the ground that it operated as a fraud upon the party with whom you are dealing." See also Chapman v. Kraehe, Mo.App., 22 S.W.2d 845, 848[2] and Steffen v. Stahl, Mo.App., 273 S.W. 118, 120[2].

■ Where a deed with covenants has been accepted and the purchaser has entered into possession of real estate, the transaction becomes an executed contract and in the absence of fraud or some other ground for equitable relief the purchaser is limited to an action on the covenants. 91 C.J.S., Vendor & Purchaser, § 161 b, p. 1122; Heady v. Hollman, 251 Mo. 632, 636, 158 S.W. 19; Bank of Brumley v. Ballenger, Mo.App., 128 S.W.2d 647, 652[1]; Messerli v. Bantrup, Mo.App., 216 S.W. 825, 826 [3].

■ The rule as to what will constitute fraud where representations as to title are involved is stated in Herman v. Hall,

140 Mo. 270, 41 S.W. 733, 734, as follows: "Of course, no one questions that a mere expression of an opinion that one's title is good will not amount to a fraud even if it should turn out worthless, but it is equally well settled that a statement of a material fact for the purpose of inducing another to act upon it implies that the person who makes it knows it to exist and speaks from his own knowledge. If the fact does not exist, and the party states it as of his knowledge that it does, and induces another to act upon his statement to his injury, the law will impute to him a fraudulent purpose."

In Bank of Brumley v. Ballenger, supra, the purchasers had accepted a warranty deed which purported to convey a fee simple title but actually conveyed only an estate for the life of Martha J. Windes. The vendor bank, through its officers and agents, represented to the purchasers that it had good title to the real estate and that it was in a position to and would convey to them a perfect title, and further represented that the title of plaintiff to said lands had been decreed by the supreme court to be a perfect title. In fact, the supreme court decision did not hold that the bank had a fee simple title in the real estate and the court rescinded the sale, holding, 128 S.W.2d 652: "Obviously, these officers knew the substance of the holding of the Supreme Court, and a representation to defendants to the effect that plaintiff had a good title and that the Supreme Court had so held, was not a mere expression of opinion, but a misrepresentation of a material fact, made with the intention of inducing defendants to rely thereon."

■ Defendant C. H. Franklin is charged with knowledge that he did not have a fee simple title and could not deliver a merchantable title. He admitted in his testimony that he knew he only had a life estate and he guessed that that would not be a complete title to the land. In view of his knowledge of the condition of the title, if he did not know "for sure"

that the title was merchantable, then he made the statement recklessly and with the same consequences as if known to be false. The statement of C. H. Franklin that he had good title and that the abstract showed good title was not, under the circumstances of this case, a mere expression of opinion but was the misrepresentation of a material fact, obviously made with the intention of inducing the plaintiffs to rely thereon. The plaintiffs did rely thereon and we cannot say that they did not act in the exercise of ordinary prudence in doing so. Albert E. Nixon had no skill or training in the examination of abstracts, and there was no lawyer available. Under the circumstances, the purchasers were justified in relying upon the assurance of C. H. Franklin and were not required to go elsewhere and engage the services of a lawyer. They were justified in relying upon the representations made by C. H. Franklin.

■ Fee simple title was conveyed to only twenty acres out of the 160. The evidence is that this twenty acres is practically worthless by itself, but that it would have some value taken in conjunction with the entire tract. The part affected by the misrepresentation constituted a material inducement to the purchase and gives the purchaser the right to rescind. Langwell v. Willbanks, Mo., 106 S.W.2d 417, 419; Owens v. Rector, 44 Mo. 389; 91 C.J.S., Vendor & Purchaser, § 161 a(2), p. 1119.

Appellants also urge that if the facts do not constitute fraud that there was a mutual mistake which would entitle them to rescission and equity, citing Shanklin v. Ward, 291 Mo. 1, 236 S.W. 64, 68 [3] and other cases. Respondents contend that this question was not raised in the trial court and therefore cannot be considered on appeal. In view of our conclusions we do not rule the question on this appeal.

■ Respondents contend, and correctly so, that there is no evidence of representations expressly made by any of the defendants other than C. H. Franklin. Mary C. Franklin is not bound merely be-

cause she is the wife of C. H. Franklin. Henry v. Sneed, 99 Mo. 407, 12 S.W. 663. However, this does not prevent a rescission of the conveyance. The rule stated in 26 C.J.S., Deeds, § 56 d, p. 277, is: "Fraud of one of several grantees in a deed whereby the instrument is procured will render it void as to the others although without the privity of the latter." This applies as well to grantors. There are other applications of this rule such as the setting aside of a will because of undue influence of one of the beneficiaries.

We are of the opinion that actionable fraud was committed against the plaintiffs entitling them to rescission and restitution under Count I of their petition, but the evidence is insufficient to show malice or any other ground for the recovery of punitive damages under Count II.

The judgment as to Count II of the First Amended Petition is affirmed. Plaintiffs' evidence as to the reasonable value of improvements made on the land and the reasonable rental value of the farm is inconclusive and unsatisfactory and the defendant offered no evidence at all on the items. The judgment, therefore, as to Count I of the petition is reversed and remanded with directions to hear such evidence as the parties may desire to offer with reference to improvements made by plaintiffs in good faith on said lands, the rental value of the premises and other proper charges and counter-charges, and that a decree of rescission be rendered in favor of the plaintiffs and against all the defendants under said Count I of the petition, together with a judgment in favor of plaintiffs and against defendant C. H. Franklin adjusting the equities between the parties, and that such judgment be made and constitute a lien on the land and improvements superior to the interests of all of the defendants and for the entry of such further orders, not inconsistent with this opinion, as may be necessary or desirable to make it effective.

All concur.