**Dale F. TROSKE, Plaintiff-Appellant,**

**v.**

**MARTIGNEY CREEK SEWER COMPANY, Defendant-Respondent.**

Nos. 49391, 49390.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 4, 1986.

Motion for Rehearing and/or Transfer
Denied March 11, 1986.

Application to Transfer Denied
April 15, 1986.

Dale F. Troske, St. Louis, for plaintiff-appellant.

Louis A. Robertson, St. Louis, for defendant-respondent.

PUDLOWSKI, Judge.

Appellant, Dale Troske, appeals from a judgment which permanently enjoins him from emptying, cleaning, or pumping raw sewage into the sanitary sewer system of the respondent, Martigney Creek Sewer Company. He also appeals from the dismissal of his petition for a writ of mandamus to require the respondent to reconnect his home to its sewer system and from the dismissal of his counterclaim for damages arising from the respondent's allegedly wanton and malicious actions.

Appellant resides at 138 Burncoate in St. Louis County, Missouri. In April 1981, he experienced drainage problems and contracted with the AA Quick Company ["contractor"] to remedy the situation. The contractor unclogged the service sewer, installed a vertical pipe to the service sewer, and provided a clean-out above ground. This work required the excavation of the lateral sewer line in appellant's front yard.

The contractor completed these repairs on May 5, 1981. This work, however, was done without a permit from either the respondent or from the St. Louis County Department of Public Works ["the Department"]. As a result, neither entity was informed of the work or afforded an opportunity to inspect the repairs.

In late May, the Department learned of the repairs and informed both the contractor and the appellant of the violation. Thereafter, the contractor secured the necessary permit from the Department and on June 12, 1981, representatives of the Department reexcavated and inspected the repairs. Following this inspection, appellant noticed that the clean-out was no longer perpendicular to the ground and requested that the Department reexamine the work. This examination resulted in the Department's directive to the contractor to make arrangements for another excavation to permit further reinspection. No additional inspection took place, however, because the contractor and the appellant could not agree on the conditions under which the reexcavation would take place.

As a result of these events, the appellant sued St. Louis County. Because of this litigation, the respondent first learned of the work performed on the appellant's sewer. On September 4, 1981, the respondent notified the appellant of the company rule that requires both a company issued permit for sewer work and the presence of a company inspector during the job. This notice also informed the appellant that his contractor was familiar with these rules and that if the respondent was not permitted to inspect the repairs, his property would be disconnected from the respondent's sewer system.

In response, the appellant appealed to the Missouri Public Service Commission ["the Commission"]. On October 28, 1981, in a preliminary reply to both the respondent and the appellant, the Commission upheld the validity of the respondent's rules and reiterated its right to have an inspector present during sewer work. Thereafter, the respondent wrote the appellant's attorney and again demanded an opportunity to inspect the repairs by November 13, 1981. No inspection took place, however.

While appellant's complaint before the Commission was pending, the respondent sent the appellant another letter scheduling

an inspection for December 18, 1981. On that day, the respondent's inspector examined the clean-out, however, when he sought to inspect the drains in the appellant's basement, he was denied admittance to the house.

On January 6, 1982, the Commission heard the appellant's complaint. During the hearing, the respondent's representative explained that basement inspections were customary. In addition, the deputy director of the St. Louis County Department of Public Works testified that there was no way the appellant's sewer work could be inspected without reexcavation. On July 12, 1982, the Commission dismissed the appellant's complaint. In its order, the Commission also stated that the respondent's proposed inspection was reasonable and that termination of the appellant's sewer service upon noncompliance was lawful.

On September 27, 1982, the respondent sent the appellant another letter setting October 8, 1982, for inspection. This deadline, however, was suspended pending the disposition of the appellant's appeal of his action against St. Louis County.

On December 30, 1982, this court dismissed the appellant's appeal. In May 1983, the respondent mailed the appellant another notice for inspection. Once again, he was notified that his noncompliance would result in the termination of his sewer service.

No inspection took place and on June 21, 1983, the appellant's sewer service was discontinued. Following this disconnection, appellant still experienced some sewer service, yet on July 25, 1983, he was caught pumping raw sewage from his home into the manhole of respondent's sewer. In addition, the appellant was also caught in an attempt to dig down to the sewer.

Thereafter, the respondent filed a petition for a temporary and permanent injunction on July 29, 1983. In response, the appellant filed a counterclaim alleging that the respondent's disconnection was wanton and malicious and sought fifty thousand dollars in actual damages and one million dollars in punitive damages. He also petitioned for a writ of mandamus to require the respondent to reconnect his home to its sewer system. He later amended this petition to include a second count for injunctive relief.

On October 13, 1983, in lieu of a hearing to show cause why the respondent's injunction should not be issued, the appellant agreed to a consent order in which he would refrain from emptying, cleaning, and pumping raw sewage into the respondent's sewer system until he reached a reconnection agreement with the respondent, or until the injunction was dissolved, modified, or made permanent. No reconnection agreement was ever entered into and on October 11, 1984, the trial court made the injunction permanent. On October 17, 1984, the trial court dismissed the respondent's petition for mandamus and injunctive relief. The trial court further awarded the respondent costs and attorney's fees, but never expressly entered judgment on the appellant's counterclaim.

On appeal, the appellant raises four points of error: (1) the trial court erred in awarding legal fees to the respondent; (2) the trial court erred in issuing the injunction; (3) the trial court erred in dismissing his petition for a writ of mandamus; and (4) the trial court erred in not setting a hearing for his counterclaim.

■ We first address those points which present jurisdictional issues. In his third point, the appellant argues the trial court erred in dismissing his petition for a writ of mandamus because he had a legal right to sewer service. Although neither party raised the issue, we address the question whether we possess jurisdiction to answer this claim sua sponte. Since a party may neither appeal from the denial of mandamus relief, barring the issuance of an alternative writ, nor appeal the dismissal of a petition for a writ of mandamus, we dismiss this point of error for want of appellate jurisdiction. *Gullic v. City of Fredricktown*, 679 S.W.2d 436, 437 (Mo.App. 1984); *State ex rel. Gorris v. Mussman*, 612 S.W.2d 357, 362 (Mo.App.1980).

■ Appellant also argues that the trial court erred in neither ruling on nor setting

a hearing for his counterclaim. Such a contention raises the question whether the trial court's order permanently enjoining the appellant from using the respondent's sewer system was final for purposes of appeal because his counterclaim remained undecided. However, we will sustain a judgment as final even though the trial court never entered judgment on the counterclaim where the judgment carries with it by implication a disposition of the counterclaim. *Highland Inns Corp. v. American Landmark Corp.*, 650 S.W.2d 667, 669 n. 1 (Mo.App.1983); *Glick v. Glick*, 372 S.W.2d 912, 915 (Mo.1963).

█ In the present case, the trial court never expressly entered judgment on the appellant's counterclaim. However, its order permanently enjoining the appellant from using the respondent's sewer system carried with it by implication a finding that the respondent's act of disconnection was lawful. Therefore, the trial court's grant of injunctive relief for the respondent necessarily disposed of the appellant's counterclaim that the respondent's actions were wrongful.[1]

We next address the appellant's contention that there was insufficient evidence to support the trial court's order permanently enjoining the appellant from using the respondent's sewer system. He argues that the trial court erred because it failed to compare his injury from loss of sewer services with the harm sustained by the respondent. He also contends that the trial court's order was improper because injunctive relief cannot be used to correct past acts.

In this court-tried case, we will sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Moreover, in our review, we recognize that the grant of injunctive relief largely rests within the sound discretion of the trial court. *May Department Stores Co. v. County of St. Louis,* 607 S.W.2d 857, 870 (Mo.App.1980).

Generally, a trial court will not order injunctive relief unless (1) there is no adequate remedy at law, *State ex rel. Taylor v. Anderson*, 362 Mo. 513, 242 S.W.2d 66, 72 (1951); (2) it is necessary to maintain the status quo and to prevent future wrong-doing, *Cissell v. Brostron*, 395 S.W.2d 322, 325–326 (Mo.App.1965); (3) irreparable injury is likely, *Gruet Motor Car Co. v. Briner*, 229 S.W.2d 259, 264 (Mo.1950); and (4) the right to be protected is a substantial one, *Hubert v. Magidson*, 243 S.W.2d 337, 343–344 (Mo.1951). In addition, the trial court will consider how the public interest will be best served. *Humphreys v. Dickerson*, 216 S.W.2d 427, 429 (Mo.1948).

█ Guided by these well-settled principles, we conclude that the trial court did not err in granting the respondent injunctive relief. The trial court's order was supported by both the law and substantial evidence. Without injunctive relief, the respondent would not have been able to protect its right to and the public's interest in an unpolluted sewer system. Indeed, the injunction was necessary to maintain the status quo following the disconnection of the appellant's sewer service. Already, prior to the consent order, the appellant had been caught pumping raw sewage from his home into the respondent's system.

Moreover, barring injunctive relief, the respondent would not have been able to enforce its rules which require that all sewer facilities be maintained subject to the approval of the respondent's inspectors. Testimony of both the respondent's superintendent and the appellant clearly established that the appellant failed to comply with company rules by forbidding an inspection of his basement and the repairs performed on his lateral sewer. For almost two years, the respondent warned the

---

1. Our result is supported by the findings of fact and conclusions of law of trial court. In these findings and conclusions, the trial court dismissed the appellant's counterclaim, however, the trial court never entered these findings and conclusions as part of its judgment nor incorporated them into its order permanently enjoining the appellant.

appellant that the consequence of his non-compliance would be the termination of his sewer service, yet the appellant steadfastly refused to cooperate with the respondent.

We last address the appellant's claim that the trial court erred in awarding attorney's fees to the respondent. Generally, attorney's fees are personal in nature and unless provided by statute or allowed by a court of equity to balance the equities in "very unusual circumstances," they are not allowable as costs. *Calvin v. Sinn*, 652 S.W.2d 277, 279 (Mo.App.1983); *Osterberger v. Hites Construction Co.*, 599 S.W.2d 221, 230 (Mo.App.1980). Since the respondent has not demonstrated that the present case was so very unusual that the allowance of attorney's fees was warranted, we reverse that portion of the trial court's judgment awarding attorney's fees.

The trial court's allowance of attorney's fees is reversed. The appellant's appeal of the trial court's order dismissing his petition for mandamus relief is dismissed for want of appellate jurisdiction. The judgment of the trial court in all other respects is affirmed.

CRANDALL, P.J., and SATZ, J., concur.