Gene C. THOMPSON, Appellant,

v.

Herb ST. JOHN and Mary St. John, Respondents.

No. 20072.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 6, 1996.

John Sims, Sims, Johnson, Wood & Higdon, Neosho, for appellant.

Philip J. Metz, Joplin, for respondents.

CROW, Judge.

This effort by Defendants, Herb St. John and Mary St. John, to obtain an order from the trial court setting aside a judgment against them in favor of Plaintiff, Gene C. Thompson, evolved into a procedural nightmare. Our effort to resolve the bewildering issues confronting us will be undertaken only after we grope our way, step-by-step, through the sinuous maze presented by the bizarre record.

January 3, 1992. Plaintiff sues Defendants on a promissory note dated January 5, 1977, in the principal amount of $47,000. Petition prays for judgment in the amount of $28,-160.78 plus interest of $6.16 per day from December 20, 1991, together with a reasonable attorney's fee. Summonses are issued and delivered to sheriff.

January 29, 1992. Docket entry: "2 returns filed."

June 7, 1994 (28 months later). Plaintiff, accompanied by lawyer John Sims, appears in trial court and testifies in support of petition, avowing the sum due is $33,632.58. Docket entry: "... Resp [sic] appear not.... Default judgment ordered entered...." Trial court announces:

> "A judgment is ordered in the amount as stated in the testimony, together with an attorney fee of 15 percent of the amount due. I'll execute a formal judgment with the specific figures in it."

June 27, 1994. Document designated "Judgment," signed by trial court, is stamped "Filed" by circuit clerk. It awards Plaintiff judgment against Defendants "jointly and severely" [sic] in the amount of $33,632.15 (43 cents less than the amount testified to by Plaintiff), with interest at eight percent per annum and an attorney fee of $1,681.63. According to a docket entry, a copy of the

judgment is sent to lawyer Sims and to Defendant Herb St. John.

July 7, 1994. Circuit clerk receives two motions from lawyer Philip Metz on behalf of Defendants. We henceforth refer to the motions as "Motion I" and "Motion II," respectively.

Motion I is designated "Motion to Set Aside Default Judgment." It cites "Rule 75.05(d)"[1] and avers, in substance, that Defendants have a meritorious defense to Plaintiff's claim and that Defendants' failure to appear in trial court "was not intentionally or recklessly designed to impede the judicial process." Motion prays for an order "setting aside the default judgment entered by this court on June 7, 1994" [sic] and allowing Defendants to file an answer.

Motion II, like Motion I, is designated "Motion to Set Aside Default Judgment." It avers Plaintiff's petition prayed for judgment in the principal amount of $28,160.78, but trial court entered judgment for $33,632.15. Motion II also points out that petition prayed for a reasonable attorney's fee and trial court "awarded $1,681.43 [sic] in attorney fees" without a showing of the number of hours lawyer Sims worked on the case or his hourly rate. Citing *Pierce v. Pierce,* 737 S.W.2d 508 (Mo.App.E.D.1987), Motion II asserts a default judgment can be set aside as irregular if the relief is greater or different than that requested in the petition. Arguing that the relief granted in the judgment against Defendants is greater and different from the relief requested in Plaintiff's petition, Motion II prays trial court to set judgment aside as irregular and allow Defendants to file an answer.

The docket entry of July 7, 1994 (the date the circuit clerk received Motion I and Motion II), states: "Motion to set aside default judgement filed."

A careful reader will note the above entry indicates one motion, not two, was filed. Evidently, that is because the circuit clerk, upon receiving Motion I and Motion II, stamped both "Filed," but returned one to lawyer Metz. During oral argument in this Court, lawyers Sims and Metz stipulated that Motion I was the one inserted in the trial court file and Motion II was the one sent back to Metz.[2]

July 14, 1994. Docket entry: "Motion set 8/2/94 at 9:00 A.M."

August 2, 1994. Docket entry: "Motion to set aside default judgment overruled." This entry and the preceding one corroborate our earlier conclusion that only Motion I was placed in the trial court file.

August 4, 1994. Defendants, by lawyer Metz, file "Motion to Reconsider." It avers Defendants "were not given notice that their motions were set for hearing on August 2, 1994."[3] Citing Rule 44.01(d),[4] the Motion to Reconsider asserts Defendants were entitled to at least five days notice in advance of the August 2 hearing. Motion to Reconsider prays:

> "... that the Court's overruling the Motion to Set Aside Default Judgment be set aside and that the motions be reset for hearing, and that notice be given to the defense...."

November 1, 1994. Trial court conducts hearing on Motion to Reconsider. Lawyers Sims and Metz appear. Trial court concedes Defendants "probably are entitled to have the hearing that you did not have here on August the 2nd."

Lawyer Sims argues that because more than thirty days have elapsed since Motion I was denied, the denial is final and "we can't go back." According to Sims, trial court has

---

1. There is no such rule, nor was there on July 7, 1994.

2. We infer that inasmuch as both motions were designated "Motion to Set Aside Default Judgment," the circuit clerk, without reading either motion, assumed Motion II was a duplicate of Motion I and that lawyer Metz wanted Motion II stamped "Filed" and returned to him to confirm the filing date.

3. Metz's use of the plural, "motions," indicates he had the impression that both Motion I and Motion II were before the trial court on August 2, 1994.

4. Rule references are to Missouri Rules of Civil Procedure (1994).

"probably lost jurisdiction to do anything further."

Trial court makes no ruling, but grants parties time to file suggestions. According to the docket sheet, the parties did so.[5]

November 18, 1994. Defendants file three more motions.

One is designated "Third Motion to Set Aside Default Judgment." We henceforth refer to it as "Motion III."

Another is designated "Motion for Relief from Order Overruling Motion to Set Aside Default Judgment Pursuant to Supreme Court Rule 74.06." We henceforth refer to it as "Motion for Relief I." The reason for the Roman numeral is obvious in the next paragraph.

The third motion is designated "Motion for Relief of Default Judgment Pursuant to Supreme Court Rule 74.06." We henceforth refer to it as "Motion for Relief II."

Motion III avers Defendants have a meritorious defense to Plaintiff's petition and endeavors to plead facts demonstrating the existence of such defense.

Motion for Relief I asserts trial court's order of August 2, 1994, is an order from which relief may be obtained under Rule 74.06(b).[6] Motion for Relief I maintains Defendants are entitled to relief from the August 2 order because it is "irregular" in that Defendants were given no notice of the hearing at which the order was entered, contrary to the five-day notice requirement of Rule 44.01(d). Motion for Relief I prays trial court to vacate order of August 2, 1994, and set the "Motion to Set Aside Default Judgment"[7] for hearing.

Motion for Relief II seeks relief from the judgment of June 27, 1994—not from the order of August 2, 1994. Motion for Relief II endeavors to invoke three provisions of Rule 74.06(b)[8]: clause "(2)," authorizing relief from a judgment on the ground of fraud or misconduct of an adverse party; clause "(4)," authorizing relief from a void judgment; clause "(5)," authorizing relief from a judgment if it is no longer equitable that the judgment remain in force. Motion for Relief II prays trial court to set aside the June 27, 1994, judgment and dismiss Plaintiff's petition or, alternatively, to allow Defendants to "litigate the issues."

December 6, 1994. Trial court conducts hearing. Lawyers Sims and Metz appear. Metz calls trial court's attention to circuit clerk's failure to place Motion II in trial court file on July 7, 1994. Metz tenders Motion II.

Trial court remarks: "Probably the way to clean this file up is to sustain [Metz's] motion. . . . But let me read the motions first."

Metz asks trial court whether it wants "to hear some testimony under oath to support the motions."

Trial court replies, "I would like for you to submit an affidavit."

December 8, 1994. Defendants file four affidavits. Each affidavit is signed by both Defendants. One affidavit purports to support Motion I and Motion II, but its averments are pertinent to only Motion I. The other three affidavits support, respectively, Motion III, Motion for Relief I, and Motion for Relief II.

January 11, 1995. Trial court files "Order Setting Aside Default Judgment." It reads:

> (c) . . . The motion shall be made within a reasonable time and for reasons (1) and (2) and (3) of subdivision (b) not more than one year after the judgment or order was entered. . . ."

---

5. The record on appeal does not contain the suggestions.

6. Rule 74.06 reads, in pertinent part:
 "(a) . . . .
 (b) . . . On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment or order for the following reasons: (1) . . . (2) fraud . . . or other misconduct of an adverse party; (3) the judgment is irregular; (4) the judgment is void; or (5) . . . it is no longer equitable that the judgment remain in force.

7. Motion for Relief I yields no clue as to whether Defendants are referring to Motion I, Motion II, or Motion III.

8. Footnote 6, *supra.*

". . . After reviewing the pleadings, the court enters an Order Setting Aside the Default Judgment previously entered by this court on July 7, 1994 [sic]. The Order of this court dated July 7, 1994, [sic] is hereby vacated."

An attentive reader will recall the trial court entered no judgment or order on July 7, 1994.

Plaintiff brings this appeal from the order of January 11, 1995. Plaintiff treats the order as one setting aside the judgment signed by the trial court and filed June 27, 1994.

Defendants treat the order of January 11, 1995, the same as Plaintiff. Consequently, so shall we. However, we do not imply we would have done so had its effect been in dispute.

The first of Plaintiff's four points relied on reads:

"The trial court erred in entering its order of January 11, 1995, which order set aside the default judgment entered against [Defendants] on June 27, 1994, inasmuch as the court had no authority to enter such an order. The court lost its authority to set aside the judgment under Rule 75.01,[9] since more than thirty (30) days had elapsed after the Motion to Set Aside Default Judgment was overruled."

The point is premised on the notion that once thirty days passed following entry of the August 2, 1994, order denying Motion I (the only motion in the trial court file that date), the trial court was powerless to enter the contrary order of January 11, 1995, vacating the June 27, 1994, judgment.

■ Had there been no irregularity in the August 2 order, Plaintiff's premise might be sound. However, as emphasized by Defendants, the August 2 order was entered at a hearing about which they were not notified. Defendants' Motion to Reconsider pointed out that flaw to the trial court and asked the trial court to set aside the August 2 order.

Defendants' Motion for Relief I, which also sought relief from the August 2 order, specifically invoked Rule 74.06(b)(3),[10] which authorizes relief from an irregular final order. Consequently, when the trial court entered the order of January 11, 1995, the issue of irregularity of the order of August 2, 1994, was squarely before the trial court.

■ Although the order of January 11, 1995, contains no provision specifically vacating the order of August 2, 1994, we infer the trial court intended the January order to have that effect. Otherwise, the record would contain contrary orders: the August 2 order leaving the June 27, 1994, judgment intact and the subsequent January 11 order setting the judgment aside.

Although—as one would expect—we find no case with facts similar to these, there are cases which help by analogy. Among them are *Reynolds v. Briarwood Development Co., Inc.*, 662 S.W.2d 905, 906[3] (Mo.App.E.D. 1983), holding that a finding for a plaintiff which necessarily carries with it a finding against a defendant on the latter's counterclaim constitutes a final judgment even though the judgment ignores the counterclaim, and *Troske v. Martigney Creek Sewer Co.*, 706 S.W.2d 282, 284–85[2] (Mo.App.E.D. 1986), holding that a judgment is final, although ignoring a counterclaim, where the judgment carries with it by implication a disposition of the counterclaim.

Consistent with the rationale of *Reynolds* and *Troske*, we hold the order of January 11, 1995, setting aside the judgment of June 27, 1994, carried with it by implication a vacatur of the order of August 2, 1994, denying Motion I. That leads to the next issue: Did the trial court have power on January 11, 1995, to vacate its order of August 2, 1994?

■ *Burris v. Terminal Railroad Association*, 835 S.W.2d 535 (Mo.App.E.D.1992), is helpful in identifying the type of order from which relief is available under Rule 74.06(b)(3). There, the trial court entered an order directing the plaintiffs to comply with

---

9. Rule 75.01 reads, in pertinent part:
 "The trial court retains control over judgments during the thirty-day period after entry of judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate . . . its judgment within that time. . . ."

10. Footnote 6, *supra*.

various discovery requirements by a certain deadline and providing that if they failed to do so, all of their claims would be dismissed with prejudice, without further order. *Id.* at 537. The plaintiffs failed to comply, whereupon the trial court, without notice to the plaintiffs, dismissed their claims with prejudice. *Id.*

The plaintiffs in *Burris* moved the trial court to set aside the order of dismissal as irregular under Rule 74.06(b)(3), averring the lack of notice denied them the opportunity to apprise the court of their efforts at compliance. *Id.* at 537–38. The appellate court said:

"To be irregular, the judgment must be materially contrary to an established form and mode of procedure for the orderly administration of justice. *Barney v. Suggs,* 688 S.W.2d 356, 359 (Mo. banc 1985). An irregularity must render the judgment contrary to a proper result. *Id.* at 358. The rule reaches only procedural errors which, if known, would have prevented entry of a judgment. *Fischer, Spuhl, etc. v. F.T. Jones & Co.,* 750 S.W.2d 457, 460 (Mo.App.1988)."

*Burris,* 835 S.W.2d at 538[3, 4].

■ *Burris* held the automatic dismissal of the plaintiffs' claims without further notice was not materially contrary to the established procedure for enforcing discovery, *id.* at 538[6], and affirmed the order of dismissal. The opinion is helpful in that it recognizes Rule 74.06(b)(3) authorizes a trial court to grant relief from an irregular final order (although relief from the order there was unwarranted). The opinion is also helpful in that it explains that an irregular order is one that is materially contrary to an established mode of procedure for the orderly administration of justice. On that subject, we note that when the interests of a person are sought to be affected by judicial decree, due process requires that he be given notice reasonably calculated to inform him of the pending proceeding and an opportunity to appear. *Estate of Busch v. Ferrell–Duncan Clinic, Inc.,* 700 S.W.2d 86, 88[1] (Mo. banc 1985).

■ Defendants filed Motion I (and attempted to file Motion II) on July 7, 1994, seeking to persuade the trial court to set aside the judgment of June 27, 1994. The trial court's decision on that issue would obviously affect Defendants' interests, as the judgment, including the attorney fee award, exceeded $35,000.

Consequently, the hearing of August 2, 1994, at which the trial court heard and determined Motion I was a proceeding vitally affecting Defendants' interests. Applying *Estate of Busch,* 700 S.W.2d at 88[1], we hold Defendants had a due process right to notice that the hearing would be held that date. As pointed out by Defendants in the Motion to Reconsider, they were entitled by Rule 44.01(d) to at least five days notice in advance of the hearing.

Defendants' affidavit in support of Motion for Relief I alleges they received no notice that Motion I would be heard August 2, 1994, consequently neither they nor lawyer Metz appeared at the hearing. The record is void of any showing that any such notice was sent to Defendants, and Plaintiff filed no affidavit challenging Defendants' assertion that they received none.

■ The trial court made no finding as to notice; consequently, that issue is deemed found in accordance with the result reached. *Reed v. Reberry,* 883 S.W.2d 59, 61[1] (Mo. App.S.D.1994); *Zolman v. SEMO Produce, Inc.,* 875 S.W.2d 605, 606[1] (Mo.App.S.D. 1994). As shall become apparent *infra,* a finding that Defendants were given no notice of the August 2, 1994, hearing is consistent with the result reached. Accordingly, we shall proceed as if the trial court had made such a finding.

The notice requirements of Rule 44.01(d) and (e) are the established procedure for notice of hearings on motions. Because Defendants were given no notice of the August 2, 1994, hearing, we hold the order entered that date was materially contrary to the established mode of procedure under the criteria of *Burris,* 835 S.W.2d at 538[3, 4]. Because of that, and because the August 2 order left the judgment of June 27, 1994, against Defendants intact, we hold the August 2 order was an irregular final order within the meaning of Rule 74.06(b)(3).

Under Rule 74.06(c),[11] Defendants had a reasonable time, but not more than one year, to move the trial court to vacate the August 2, 1994, order as irregular. Defendants filed two motions asking the trial court to do so: the Motion to Reconsider, filed August 4, 1994, and Motion for Relief I, filed November 18, 1994. Both were filed within one year after entry of the August 2, 1994, order, and Plaintiff does not argue that Defendants failed to file either within a reasonable time.

We therefore hold the trial court, on January 11, 1995, was empowered by Rule 74.06(b)(3) to vacate the order of August 2, 1994, denying Motion I. Once the August 2 order was vacated, the case was restored to the status that existed prior to the August 2 order, hence the trial court was free to decide anew whether the judgment of June 27, 1994, should be set aside. At that point (January 11, 1995), Defendants had four pending motions attacking the judgment: Motion I, Motion II, Motion III, and Motion for Relief II.

█ Having made our way this far, we are now able to decide Plaintiff's first point. As noted earlier, Plaintiff's position is that once thirty days passed after entry of the August 2, 1994, order, the trial court's control over the order per Rule 75.01 expired, leaving the trial court powerless to enter a contrary order.

The answer to Plaintiff's contention is that the implicit vacatur of the August 2, 1994, order on January 11, 1995, was accomplished by authority of Rule 74.06(b)(3). Therefore, Plaintiff's argument that Rule 75.01 supplied no authority for the January 11 order is irrelevant.

*Mid–States Tubulars, Inc. v. Maverick Tube Corp.,* 735 S.W.2d 142 (Mo.App.E.D. 1987), cited by Plaintiff, does not aid him. *Mid–States* says that where a motion to vacate a default judgment is denied within thirty days following entry of the judgment, the order of denial is appealable. *Id.* at 144[1]. However, *Mid–States* did not involve an order of denial entered without notice to the

moving party. Indeed, *Mid–States* did not involve an order of denial at all. In *Mid–States,* the trial court set the judgment aside after a hearing at which both sides were present, hence absence of notice of the hearing was not an issue.

Plaintiff also cites *Kueper v. Murphy Distributing,* 834 S.W.2d 875 (Mo.App.E.D. 1992), which holds that a trial court retains control for thirty days over an order granting or denying a motion to set aside a default judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify the order within that time. *Id.* at 878[1]. Upon expiration of the thirty-day period, the order becomes final and a party has ten days to appeal from it. *Id. Kueper* is inapposite in that there was no claim that the order was entered without notice and was thereby vulnerable under Rule 74.06(b)(3).

In sum, because the implied vacatur of the order of August 2, 1994, on January 11, 1995, was authorized by Rule 74.06(b)(3), the trial court's lack of authority to act under Rule 75.01 is immaterial. Plaintiff's first point is denied.

Plaintiff's second point reads:

"The trial court erred in entering its order of January 11, 1995, which order set aside the default judgment entered against [Defendants] on June 27, 1994, inasmuch as the court had no authority to enter such an order. Even if the motions filed by [Defendants] on July 7, 1994 were considered motions for new trial under Rule 78.04, they were automatically overruled pursuant to Rule 78.06,[12] since they were not passed on within ninety (90) days from filing."

Plaintiff's position, as we fathom it, is that even if the August 2, 1994, order is treated as a nullity because it was entered at a hearing about which Defendants received no advance notice, Motion I and Motion II were nonetheless denied automatically by Rule 78.06 ninety days after they were filed. Implicit in

11. Footnote 6, *supra.*

12. Rule 78.06 reads, in pertinent part:

"If the motion for a new trial is not passed on within 90 days after the motion is filed, it is denied for all purposes...."

that hypothesis is the assumption that because Defendants filed no notice of appeal within ten days after the automatic ninety-day denial, the denial became final and the trial court was powerless to enter a contrary order on January 11, 1995.

Plaintiff's second point apparently treats Motion II as filed July 7, 1994, even though the circuit clerk sent it back to Metz. As shall appear *infra*, it is unnecessary to decide whether that supposition is sound.

By Motion I, Defendants obviously intended to invoke Rule 74.05(d).[13] We reach this conclusion because Motion I averred Defendants had a meritorious defense to Plaintiff's petition and good cause for failing to appear. The meritorious defense, according to Motion I, was that Plaintiff's claim is barred by a judgment in an earlier lawsuit wherein Plaintiff should have asserted the claim as a compulsory counterclaim. The good cause, according to Motion I, was:

> "The attorney for Defendants had previously spoken with the attorney for Plaintiff concerning this lawsuit and Plaintiff's failure to pursue his compulsory counterclaim in the previous lawsuit. As a result of the discussions, the attorney for Defendants, verbally entered his appearance with Plaintiff in this lawsuit.... The attorney for Plaintiff knew of the attorney for Defendants representation of the Defendants in the prior case and intended representation of Defendants in this case. However, attorney for Plaintiff did not notify attorney for Defendants of his intention to take this matter up as a default judgment."

Inasmuch as we have ascertained that Motion I is a motion to set aside a default judgment per Rule 74.05(d), not a motion for new trial, Plaintiff's second point hinges on whether Rule 78.06 applies to a motion to set aside a default judgment.

 *Clark v. Brown*, 794 S.W.2d 254 (Mo.App.S.D.1990), holds that a motion to set aside a default judgment is not governed by rules pertaining to a motion for a new trial; consequently, a motion to set aside a default judgment is not automatically denied where the trial court fails to rule on it within ninety days after filing. *Id.* at 255–56[2]. *Clark* explains:

> "... motions [for new trial] must be filed within 15 days after judgment and will be automatically denied if not otherwise ruled at the end of 90 days. These time limitations cannot logically apply to motions to set aside defaults, which now may be filed as long as one year after the rendition of the default."

*Id.* at 256.

Applying *Clark*, we hold Motion I was not automatically denied ninety days after July 7, 1994. That holding is fatal to Plaintiff's second point.

We do not ignore *Chatman v. Civic Center Corp.*, 682 S.W.2d 31 (Mo.App.E.D.1984), cited by Plaintiff. It is not controlling in that it was decided before Rule 74.05(d) was promulgated in its present form. *Clark* is the controlling case for the present version of Rule 74.05(d).[14] Plaintiff's second point is denied.

Plaintiff's third point avers the trial court erred in entering the January 11, 1995, order in that "[n]o supporting affidavits or sworn testimony was offered as would be required if these were considered as motions under Rules 74.05(d) or 76.06 [sic]."[15]

 Inexplicably, the point ignores the four affidavits filed by Defendants on December 8, 1994, mentioned earlier in this opinion. The affidavit designated by Defendants as supportive of Motion I and Motion II states facts consistent with the averments of Motion

---

**13.** Rule 74.05(d) reads, in pertinent part:
"Upon motion stating facts constituting a meritorious defense and for good cause shown, ... a default judgment may be set aside. The motion shall be made within a reasonable time not to exceed one year after the entry of the default judgment. Good cause includes ... conduct that is not intentionally or recklessly designed to impede the judicial process...."

**14.** When *Clark* was decided, what is now subdivision "(d)" of Rule 74.05 was subdivision "(c)." It became subdivision "(d)" effective January 1, 1994, without change.

**15.** We gather from the argument following the third point that Plaintiff meant Rule 74.06, not Rule 76.06.

I, recounted in our discussion of Plaintiff's second point.

Plaintiff's third point does not maintain those facts are insufficient to justify an order setting aside the judgment of June 27, 1994. The point asserts only that such facts were not established by affidavit or testimony.

■ Where an affidavit accompanies a motion to set aside a judgment and presents facts not appearing of record, the trial court may consider the affidavit and may hear the matter on the affidavits presented by the respective parties. *Germanese v. Champlin,* 540 S.W.2d 109, 112–13[9] (Mo.App.1976); Rule 55.28. As we have seen, the trial court here announced on December 6, 1994, that it would decide the pending motions on the basis of affidavits.

*Dallas–Johnson Properties, Inc. v. Hubbard,* 823 S.W.2d 5 (Mo.App.E.D.1991), cited by Plaintiff, does not help him. It holds that if a motion to set aside a judgment contains sufficient allegations of fact for its support, the motion must be verified or supported by affidavits or sworn testimony. *Id.* at 6[1]. As explained earlier, Motion I was supported by affidavit of both Defendants. Plaintiff filed no counter affidavit. On this record, Plaintiff's third point is meritless, if not frivolous.

Plaintiff's fourth point reads:

"If any motion of [Defendants] is considered a motion to set aside the judgment because of irregularity pursuant to Rule 74.06(b)(3), there was no irregularity in determining the amount due on the judgment or in awarding attorney fees, as alleged by [Defendants]."

The only motion alleging the judgment is irregular because of the amount awarded on the note and the amount awarded as an attorney fee is Motion II. For the reasons that follow, we need not decide whether Motion II should be treated as having been filed July 7, 1994 (or ever), nor need we determine whether Plaintiff's fourth point is meritorious.

■ In addressing Plaintiff's second point, we found Motion I is a motion to set aside a default judgment per Rule 74.05(d). In *Sullenger v. Cooke Sales & Service Co.,* 646 S.W.2d 85, 89[8] (Mo. banc 1983), the Supreme Court of Missouri held that a party seeking to set aside a default judgment must prove three elements: (1) he had a good excuse for being in default, (2) he had a meritorious defense to the action, and (3) the adverse party would not be substantially harmed by the delay resulting from the judgment being set aside.[16]

■ To show facts constituting a meritorious defense as contemplated by Rule 74.05(d), a party need not present a defense in detail; however, he must demonstrate at least an arguable theory that would defeat the plaintiff's claim. *Bredeman v. Eno,* 863 S.W.2d 24, 26[3] (Mo.App.W.D.1993); *Bell v. Bell,* 849 S.W.2d 194, 198[7] (Mo.App.W.D. 1993).

Here, Motion I and Defendants' supporting affidavit stated that Plaintiff's claim is barred by a judgment in an earlier lawsuit wherein Plaintiff should have asserted the claim as a compulsory counterclaim. Motion I and the supporting affidavit identified the earlier suit and set forth the facts on which Defendants' theory of defense is based. Inasmuch as Plaintiff does not argue that those facts are insufficient to demonstrate at least an arguable theory of defense, we shall not lengthen this already prolix opinion by narrating them. We find Defendants' allegations sufficient to demonstrate at least an arguable theory of defense.

Whether Defendants showed a good excuse for allowing judgment to be taken against them by default is a tougher question.

■ As reported in our discussion of Plaintiff's second point, Motion I and Defendants' supporting affidavit establish that lawyer Metz contacted lawyer Sims about the suit, telling Sims that Plaintiff failed "to pursue his compulsory counterclaim in the previous lawsuit." According to Defendants' affidavit supporting Motion I, that conversation

---

**16.** A holding in *Sullenger* on an unrelated point was overruled by *State ex rel. DePaul Health* *Center v. Mummert,* 870 S.W.2d 820, 822 (Mo. banc 1994).

occurred "prior to the expiration of 30 days from service [of summons on Defendants]." Motion I and the supporting affidavit aver Sims knew Metz intended to represent Defendants in resisting Plaintiff's petition.

As we have seen, Plaintiff's petition lay dormant in the trial court some 28 months after Defendants were served, with no effort by Plaintiff to obtain judgment. The trial court could reasonably infer from that circumstance and from those in the preceding paragraph that there was an understanding between Metz and Sims that Sims would notify Metz before taking the case up in the trial court as a default, particularly inasmuch as Plaintiff filed no affidavit refuting Defendants' version of the facts.

In *Great Southern Savings & Loan Association v. Wilburn*, 887 S.W.2d 581, 583[3] (Mo. banc 1994), the Supreme Court of Missouri held that good cause for setting aside a default judgment under Rule 74.05(d) includes conduct that is not intentionally or recklessly designed to impede the judicial process. There, the answer of one defendant, Karen Wilburn, was due the day she retained a lawyer. The lawyer's effort to contact the plaintiff's counsel that day was unsuccessful. The next morning, the plaintiff took a default judgment against Karen and her codefendant. The Supreme Court held Karen did not recklessly or intentionally impede the judicial process, hence the judgment against her should be set aside. *Id.* at 583–84.

Here, according to Defendants' uncontradicted account of the facts, Defendants contacted Metz within thirty days after they were served with summons, thus Defendants were not dilatory in retaining counsel. Any dereliction is that of Metz, not Defendants, as Metz filed no responsive pleading, a simple task which would have protected Defendants against entry of a default judgment.

We recognize, of course, that any procedural neglect by Metz is imputed to Defendants. *Cotleur v. Danziger*, 870 S.W.2d 234, 238[5] (Mo. banc 1994). However, as noted earlier, the trial court could have reasonably inferred that Metz believed Sims would not seek a default judgment against Defendants without first notifying Metz.

Plaintiff does not argue that Defendants' version of the facts is insufficient to demonstrate good cause for failure to file a responsive pleading. Plaintiff's fourth point is directed solely to Motion II, which does not invoke Rule 74.05(d).

Having carefully considered the factors in the six preceding paragraphs, we hold the trial court could have reasonably found Defendants' conduct in failing to file a responsive pleading was not intentionally or recklessly designed to impede the judicial process.

Nothing in the record suggests Plaintiff will be substantially harmed by the delay resulting from setting the judgment aside. His brief makes no such contention, and the record is bare of any hint that he registered such a protest in the trial court. Any such complaint would be inconsistent with Plaintiff's past conduct, as he allowed 28 months to elapse between service of summons on Defendants and his appearance in the trial court to obtain the judgment.

■ Setting aside a default judgment is left to the discretion of the trial court, and its ruling should not be disturbed on appeal absent an abuse of discretion. *Engine Masters, Inc. v. Kirn's, Inc.*, 872 S.W.2d 644, 645[1] (Mo.App.E.D.1994); *Clark v. Brown*, 814 S.W.2d 634, 638[1] (Mo.App.S.D.1991). However, as courts favor a trial on the merits rather than a default, the discretion not to set aside a default judgment is narrower than the discretion to set it aside. *LaRose v. Letterman*, 890 S.W.2d 347, 350 (Mo.App. S.D.1994); *Engine Masters*, 872 S.W.2d at 645[1].

■ Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Richardson v. State Highway & Transportation Commission*, 863 S.W.2d 876, 881[15] (Mo. banc 1993). If reasonable people can differ about the propriety of the trial court's decision, it cannot be said that the trial court abused its discretion. *Id.* at [16].

Recognizing that a trial court's discretion to grant a motion to set aside a default judgment is broader than its discretion to deny such a motion, we hold Plaintiff has failed to demonstrate that setting aside the judgment of June 27, 1994, on the grounds pled in Motion I would be an abuse of discretion.

▮ That brings us to the final mystery in this enigmatic record: Did the trial court set aside the judgment on the grounds pled in Motion I? As we have seen, the trial court's cryptic order of January 11, 1995, yields no clue about the grounds on which the trial court based its ruling. We therefore apply the principle that the ruling should be affirmed if the result is correct on any tenable basis. *Reed, supra,* 883 S.W.2d at 61[1]; *In re Marriage of DuBois,* 875 S.W.2d 223, 228[6] (Mo.App.S.D.1994).

Having concluded that setting aside the judgment on the grounds pled in Motion I would not constitute an abuse of discretion, we hold that is a tenable basis for affirming the order of January 11, 1995. Having made that determination, we need not decide whether Motion II pled sufficient grounds for vacating the judgment. That renders Plaintiff's fourth point moot and relieves us from the task of deciding whether Motion II should be treated as having been filed July 7, 1994 (or ever).

The order of January 11, 1995, is affirmed and the cause is remanded to the trial court for further proceedings.[17]

PREWITT, P.J., and SHRUM, C.J., concur.

---

**17.** The docket sheet indicates that subsequent to the order of January 11, 1995, Defendants filed an answer to Plaintiff's petition, hence the case is at issue awaiting trial.